**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **FMC TECHNOLOGIES, INC.** | |
| **PLAINTIFF/** **COUNTERCLAIM DEFENDANT,** | |
| **V.** | **CIVIL ACTION NO. 4:18-CV-02459** |
| **ONESUBSEA IP UK LIMITED AND** **ONESUBSEA UK LIMITED, ONESUBSEA** **LLC, AND CAMERON INTERNATIONAL** **CORP.** | **JURY TRIAL DEMANDED** |
| **DEFENDANTS/** **COUNTERCLAIMANTS.** | |

**FMC TECHNOLOGIES, INC.'S MOTION FOR**
**SUMMARY JUDGEMENT OF INVALIDITY**
**OF U.S. PATENT NO. 9,945,202**

████████████████████████████████

Table of Contents

I.  Introduction ................................................................................................ 1

   A.  The ████ HPHT EVDT prior art ............................................ 2

   B.  The accused ████ HPHT EVDT ............................................ 2

II.  NATURE AND STAGE OF THE PROCEEDING .................................. 3

III.  Statement of the Issue ........................................................................... 3

IV.  Statement of Undisputed Material Facts ............................................ 4

   A.  U.S. Patent No. 9,945,202 ("'202 patent") ............................... 4

   B.  OSS alleges that FMC's ████ HPHT EVDT infringes ............ 5

   C.  The Design of FMC'S HPHT EVDT ......................................... 6

   D.  The HPHT EVDT was originally intended as a ████ ............. 8

   E.  ████████████████████████ ................................. 10

   F.  Shell was offered and purchased ██ HPHT EVDTs in September 2015 ............. 11

   G.  ████████████ HPHT EVDT████████████ ............... 12

   H.  The designs of the HPHT EVDTs ████████ ...................... 14

V.  Legal Standards ..................................................................................... 18

   A.  Summary Judgement ................................................................... 18

   B.  Invalidity ...................................................................................... 18

VI.  Argument .............................................................................................. 21

   A.  The HPHT EVDT was "on sale" before the '202 Patent's filing date. ................. 21

   B.  The HPHT EVDT was reduced to practice by September 2015 ............. 24

   C.  The HPHT EVDTs offered and sold to Shell anticipate the '202 patent ............. 25

VII.  Conclusion ........................................................................................... 41

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*01 Communique Lab., Inc. v. Citrix Sys., Inc.,*
889 F.3d 735 (Fed. Cir. 2018) ........................................................................ 28

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.,*
239 F.3d 1343 (Fed. Cir. 2001) ...................................................................... 34

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ........................................................................................ 26

*Buildex Inc. v. Kason Indus.,*
849 F.2d 1461 (Fed. Cir. 1988) ...................................................................... 28

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ........................................................................................ 26

*Grp. One, Ltd. V. Hallmark Cards, Inc.,*
254 F.3d 1041 (Fed. Cir. 2001) ...................................................................... 27

*Helsinn Healthcare S.A. v. Teva Pharm. USA, Inc.,*
139 S. Ct. 628 (2019) ................................................................... 27, 28, 29, 32

*Helsinn Healthcare S.A. v. Teva Pharms. USA, Inc.,*
855 F.3d 1356 (Fed. Cir. 2017) .................................................................. 28, 32

*Meds. Co. v. Hospira, Inc.,*
827 F.3d 1363 (Fed. Cir. 2016) ...................................................................... 27

*Meds. Co. v. Hospira, Inc.,*
881 F.3d at 1351–53 ........................................................................................ 32

*Microsoft Corp. v. i4i Ltd. P'ship,*
564 U.S. 91 (2011) .......................................................................................... 11

*Nike Inc. v. Wolverine World Wide, Inc.,*
43 F.3d 644 (Fed. Cir. 1994) .......................................................................... 26

*Peters v. Active Mfg. Co.,*
129 U.S. 530 (1889) ..................................................................................... 9, 10

*Special Devices, Inc. v. OEA, Inc.*,
   270 F. 3d 1353 (Fed. Cir. 2001) ............................................................... 27

*Tate Access Floors v. Interface Architectural Res.*,
   279 F.3d 1357 (Fed. Cir. 2002) ............................................................... 29

*Trading Techs. Int'l, Inc. v. eSpeed, Inc.*,
   595 F.3d 1340 (Fed. Cir. 2010) ............................................................... 28

*Upsher-Smith Labs. v. Pamlab, LLC*,
   412 F.3d 1319 (Fed. Cir. 2005) ................................................................. 9

*Vanmoor v. Wal–Mart Stores, Inc.*,
   201 F.3d 1363 (Fed. Cir. 2000) ........................................................ 29, 34

**Statutes**

35 U.S.C. § 102(a)(1) ................................................................. 10, 11, 27, 29

AIA .................................................................................................. 12, 27, 29

America Invents Act ............................................................................... 11

UCC ............................................................................................................ 28

UCC § 2-105(2) ....................................................................................... 28

**Other Authorities**

███████ Letter Request, FMCTI-0679752 ........................................ 8

FED. R. CIV. P. 56(a) .............................................................................. 26

U.S. Patent No. 9,945,202 ............................................................... *passim*

Table of Exhibits

| Exhibit No. | Description |
| --- | --- |
| 1 | Declaration of Allison Weber |
| 2 | U.S. Patent No. 9,945,202 |
| 3 | OSS Infringement Contentions, Aug. 2, 2018 |
| 4 | OSS Resp. to Rogs 23-27 |
| 5 | Attachment A to OSS Resp. to Rogs 23-27 |
| 6 | 2018-12-11 Ltr. to Fenton fr BVW re Need for Amd. Infr. Cont. |
| 7 | Stab Analysis Presentation, FMCTI-0685070 |
| 8 | Core Interface Freeze Presentation, FMCTI-0684922 |
| 9 | ███ Design Review, FMCTI-0680033 |
| 10 | ███ Contract, FMCTI-0681197 |
| 11 | 2015 ███ Contract, FMCTI-0681231 |
| 12 | 20k Well Completion System Presentation, FMCTI-0680086 |
| 13 | ███ Letter Request, FMCTI-0679752 |
| 14 | FMC Technical Proposal ███, FMCTI-0682958 |
| 15 | ███ CAD Wireframe, FMCTI-0685732 |
| 16 | ███ CAD Wireframe, FMCTI-0685709 |
| 17 | ███ CAD Cross-Section, FMCTI-0685733 |
| 17a | ███ CAD Active 3D pdf, FMCTI-0685733 |
| 18 | ███ CAD Cross-Section, FMCTI-0685734 |
| 18a | ███ CAD Active 3D pdf, FMCTI-0685734 |
| 19 | FMC Preliminary Invalidity Contentions (Excerpt) |
| 20 | 2019-01-25 Ltr. to Fenton fr. Colvin re Document Request |
| 21 | 2019-04-10 Ltr to OSS fr Winterle Demanding Dismissal |
| 22 | 2019-02-19 FMC Objs and Resps to Defs 1st set of Rogs |
| 23 | September 22, 2015 Press Release |
| 24 | Stab Drawing, FMCTI-0679900 |
| 25 | 2019-03-08 Ltr. to Slayden and Fenton re Claims 8 and 11 |
| 26 | 2019-3-5 Email fr. Fenton re Claims 8 and 11 |

## I.      INTRODUCTION

This motion is dispositive to all matters related to the '202 patent, does not depend on claim construction, and no additional discovery is needed for the Court to rule.

A well-settled maxim of patent law states: that which infringes, if later, anticipates if earlier. *Upsher-Smith Labs. v. Pamlab, LLC*, 412 F.3d 1319, 1322 (Fed. Cir. 2005) (citations omitted); *accord Peters v. Active Mfg. Co.*, 129 U.S. 530, 537 (1889).  If a patentee accuses a device in a way that also captures the prior art, then the patent is necessarily invalid.  OSS has done precisely that. If OSS's infringement allegations are to be believed, then its patent is invalid.  Given this reality, FMC has invited OSS to either dismiss its allegations or explain how they can survive.  OSS has refused to do either, leaving FMC no choice but to bring this motion to have the issue resolved by the Court.

By ███—years before the '202 patent was a glimmer in OSS's eye—FMC began developing a higher-rated type of its successful vertical subsea well completion system it called the "High-Pressure High-Temperature" EVDT system ("HPHT EVDT").  This was designed to withstand higher pressures and temperatures found in more extreme and deeper-water environments while maintaining high safety, controllability, and flowrates. Based on various potential customers' differing pressure and temperature requirements, FMC ultimately created two versions that would share the same technical architecture, ███ ████████████████████████████████████████████████████ ███████████████████████████████████████.

████████████████████████████████████████

FMC sold the ██████████ version to Shell Oil in late 2015 (well before the '202 patent's 2017 filing date), and that system is unquestionably prior art to OSS's asserted '202 patent. FMC included the ████████ version in its unsuccessful tender ████████ in mid-2018 (shortly after the '202 patent issued).

### A.   The ██████████ HPHT EVDT prior art

FMC began working ██████████ on development of the ██████████ version ████ ████, years before the 2017, filing date of the '202 patent. In September 2015, more than eighteen months before the '202 patent's filing date, Shell signed a purchase contract requiring FMC to build and deliver ██████████████ HPHT EVDTs. The purchase contract ██████████████████ is highly detailed, removing any doubt it was a commercial offer and sale. It includes, *e.g.*, identification of specific components and ordered quantities thereof, along with respective prices. It further includes specific delivery dates and payment schedules. Because it predates any relevant date surrounding the '202 patent, the purchase contract renders the HPHT EVDT system offered and sold to Shell prior art to the '202 patent at least under the "on-sale" bar of 35 U.S.C. § 102(a)(1).

### B.   The accused ██████████ HPHT EVDT

FMC developed the ██████████ version of the HPHT EVDT in parallel with the ██████████████ version sold to Shell, and for all purposes relevant to the '202 patent, the two variants are materially identical. They share the same component interfaces, and in fact many of their components are interchangeable.

In patent law, that which infringes if later invalidates if earlier. *Peters v. Active Mfg. Co.*, 129 U.S. at 537. Based on OSS's infringement allegations against FMC's 2018

2

██████████████████████████

actions involving the HPHT EVDT, if taken as true, the asserted claims of the '202 patent are inescapably invalid as anticipated by the HPHT EVDT offered and sold to Shell.

FMC has repeatedly explained this over the last five months, and has explicitly asked OSS to dismiss its claims on this basis.  OSS has not only refused to dismiss its claims, but also refused to even explain how it actually believes that the ██████████ HPHT EVDT can infringe on the one hand, without the 2015 sale of the HPHT EVDT sold to Shell anticipating those same claims on the other.  Consequently, FMC and the Court have been required to waste significant resources on many issues related to the '202 patent.[1]

## II.    NATURE AND STAGE OF THE PROCEEDING

OSS filed its counterclaim of infringement of the '202 patent on August 2, 2018. (Dkt. 44.)  FMC served invalidity contentions under P.R. 3-3 and 3-4 on November 15, 2018. (FMC Invl. Cont., Ex. 19.)  FMC now moves for summary judgment on the basis that prior art identified in its contentions anticipates the claims (1-14) asserted by OSS.

## III.    STATEMENT OF THE ISSUE

Assuming for the purposes of this motion only that OSS's infringement allegations against FMC's ██████████ HPHT EVDT are true, does the HPHT EVDT as offered and sold by FMC to Shell in 2015, and which is materially identical to the accused HPHT EVDT, anticipate those same asserted claims of the '202 patent under the America Invents Act ("AIA") version of 35 U.S.C § 102(a)(1)?  Invalidity must be proven by clear and convincing evidence. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011).

---

[1] FMC reserves its rights to seek its fees related to defending against accusations involving the '202 patent going back to the November 15, 2018, date it first served P.R. 3-3 invalidity contentions explaining how its 2015 offer and sale renders all asserted claims anticipated.

## IV. STATEMENT OF UNDISPUTED MATERIAL FACTS

### A. U.S. Patent No. 9,945,202 ("'202 patent")

Pursuant to P.R. 3-1(a), OSS has alleged that FMC infringes claims 1-14 of the '202 patent. (Infg. Cont. at 1, Ex. 3)  The '202 Patent was filed pursuant to the AIA on March 27, 2017, claims priority to no earlier applications, and issued about a year later on April 17, 2018. ('202 Patent, Ex. 2)  The '202 Patent relates to subsea completion systems and its claims generally recite a typical vertical subsea installation with the following structure:

1. A tubing head spool (also called a "tubing spool") coupled to a wellhead rising from the sea floor;

2. A tubing hanger in the tubing head spool;

3. A subsea tree (also called a "tree") coupled to the tubing head spool;

4. Both a production stab and an annulus stab between the tubing hanger and subsea tree; and

5. Various valves along the annulus flow path.

For reference, Figure 2 of the '202 patent has been annotated below to show the general relationship of this structure:



**B.   OSS alleges that FMC's ▮▮▮▮▮ HPHT EVDT infringes**

The Patent Rules in this District require "a party claiming infringement" to serve

preliminary infringement contentions that contain "a specific and separate identification of

each accused apparatus, product, device . . . of [the] opposing party." P.R. 3-1(b).

OSS served its contentions pursuant to that rule on August 2, 2018. (Ex. 3.)  There,

all OSS identified was "FMC's 20ksi 350 High Pressure High Temperature Enhanced

Vertical Deepwater Tree" ("20k EVDT"). (*Id*. at 2.)  OSS further confirmed the scope of

its accusation in December 2018, in response to an interrogatory asking OSS to further

detail bases for its allegation.[2] (OSS Resp. to Rogs 23-27, Ex. 4; Attach. A, Ex. 5.)

---

[2] The document OSS used to create its initial infringement contentions did not accurately depict
the HPHT EVDT.  After raising this issue with OSS and demanding that it serve proper
contentions depicting how OSS alleged the actual structure of the HPHT EVDT meets the claim
elements, OSS served interrogatory responses that provided slightly more, although still
deficient, information. (2018-12-11 Ltr. to Fenton fr Winterle re Need for Amd. Infr. Cont., Ex.

███████████████████████████████████████████████

### C.   The Design of FMC'S HPHT EVDT

FMC began development of its HPHT EVDTs by 2013 to address a need to effectively and safely control oil production in deepwater subsea environments.  Oil at certain ocean depths is often under very high pressures and temperatures, above 10,000 psi, and is very hot.  (Weber Decl. ⁋ 3, Ex. 1.)  Those factors, combined with the seawater pressure at such depths, create an operating environment that no versions of vertical trees available and qualified for use at the time could adequately handle. (*Id*.)

FMC's HPHT EVDT development included a novel approach to the design of the production and annulus stabs. (*Id*. at ⁋6.)  Of course FMC did so without reference to the '202 patent, which was not available to the public until its issuance in 2018.

When a tree is landed on a tubing spool already installed on a wellhead, the production stab connects the production flow paths and the annulus stab, if there is one, connects the annulus flow paths. (*Id*. at ⁋4.)  Production and annulus stabs can be designed as separate components (*Id*. at ⁋6) as shown in the annotated figure below.

---

6; OSS Resp to Rogs 23-27, Ex. 4; Attachement A, Ex. 5.)  While OSS's response still did not provide clarity as to how it alleges the HPHT EVDT meets the claim limitations, it made clear that the ████████ HPHT EVDT is the only FMC product OSS accuses of infringing.



(Ex. 2 at FIG. 2 (annotated).)

FMC's novel approach ███████████████████████████████████



██████████████████████████████████████

(Ex. 2 at FIG. 2 (annotated).) ███████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████

**D.   The HPHT EVDT was originally intended as a** ████████████
████

███████████████████████████████████████████

(Ex. 1 at ¶10.) ██████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████

8

_____

[3] "Appomattox" is the name of the field where Shell intended to deploy FMC's HPHT EVDTs.

██████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

███

**E.**  ████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████  Long-lead purchase orders like

this are customary in the field because certain items take a significant amount of time and

a large amount of money to procure. (Ex. 1 at ¶18.)  Below is an excerpt from the ███

████████████  that shows a summary of the items covered and the cost estimate for each:



(Ex. 10, at Att. A.)  In this case, the ████████████████████████

████████████████████████████████████

████████████████████████████████

**F.** ███████████████████████████████████
███████████

Shell made good on its intentions on September 21, 2015, when it signed a ██████ ██████ contract for ████████████████ HPHT EVDTs for use in the Appomattox field. (FMCTI-0681231, Ex. 11.)  The ██████ 2015 ████████ contract is very detailed and includes specific deliverables and costs. (*Id*.)  For example, this excerpt shows the scope of the agreement included ████████████████ HPHT EVDTs for the Appomattox project.



(Ex. 11 at 50.)  Other pages show the quantities and specific unit prices for components of the HPHT EVDTs, such as tree, tubing hanger, and tubing head assemblies.



11



(*Id*. at 23.)  The 2015 ▮▮▮▮ contract even identifies key delivery dates for ▮▮▮▮ production HPHT EVDT deliveries.

(*Id*. at 11.) At the time of the September 2015 ▮▮▮▮ contract the design of the HPHT EVDT was fundamentally complete and had been qualified. (Ex. 1 at ¶19.)

### G.  The accused ▮▮▮▮ HPHT EVDT ▮▮▮▮

During FMC's development of the ▮▮▮▮ HPHT EVDT for Shell, FMC was also leading the development of a ▮▮▮▮ version ▮▮▮▮

▮▮▮▮

▮▮▮▮

▮▮▮▮ That presentation showed that the ▮▮▮▮-rated versions of the HPHT EVDTs were designed ▮▮▮▮

▮▮▮▮

▮▮▮▮



(Ex. 12 at 2.)

Given those stated design principles, it is no surprise that ███████████



(Ex. 12 at 15.)

13

███████████████████████████

████████████████████████████████████

██████████████████████████

█████████████████████████████████

████████████████████████████████████

████████████████████ ██████████████

█████████████████████ █████████████

**H.  The designs of the HPHT EVDTs** ████████████████

The HPHT EVDTs, regardless of specific qualified ratings, were designed from the

outset to include the same design concepts, common interfaces, and core components. (Ex.

1 at ¶25.) ███████████████████████████████

████████████████████████████████████

████████████████████████████████████

█████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████





The detailed view of the tree portion of the HPHT EVDTs tells much the same story.



The detailed view of the tubing spool portion of the HPHT EVDTs shows a similar configuration. ████████████████████████████████████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████



(Ex 17 (left); Ex. 18 (right).)

## V.    LEGAL STANDARDS

### A.    Summary Judgement

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Nike Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644, 646 (Fed. Cir. 1994); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A fact is "material" if it might reasonably affect the outcome of the case. *Id.* at 248.

### B.    Invalidity

A person is not entitled to a patent when the claimed invention was "on sale, or otherwise available to the public before the effective filing date of the claimed invention."

35 U.S.C. § 102(a)(1).  The Supreme Court recently held that the meaning of "on sale" has not changed with AIA. *Helsinn Healthcare S.A. v. Teva Pharm. USA, Inc.*, 139 S. Ct. 628, 632 (2019).  Sales "to a third party who is obligated to keep the invention confidential can qualify as prior art under §102(a)." *Id.*  All that is required for a purported invention to be "on sale" within the meaning of the statute is that the claimed invention is "the subject of a commercial offer for sale and ready for patenting." *Id.* at 630 (quoting *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 67 (1998) (internal quotations omitted)).

Offers for sale are "without regard to whether the offer discloses each detail of the invention." *Id.* at 633 (citing *Pfaff*, 525 U.S. at 67).  The sale does not need to be public in order for the on sale bar to apply. *See id.* at 633 ("Other cases focus on whether the invention had been sold, not whether the details of the invention had been made available to the public or whether the sale itself had been publicly disclosed." (citations omitted)); *Special Devices, Inc. v. OEA, Inc.*, 270 F. 3d 1353, 1357 (Fed. Cir. 2001) (confirming that sales, "even if they took place in secret," are invalidating acts).  An offer for sale is "one which the other party could make into a binding contract by simple acceptance. *Grp. One, Ltd. V. Hallmark Cards, Inc.*, 254 F.3d 1041, 1048 (Fed. Cir. 2001).

The question of whether there is an offer for sale must be "analyzed under the law of contracts as generally understood" and "must focus on those activities that would be understood to be commercial sales and offers for sale 'in the commercial community.'" *Meds. Co. v. Hospira, Inc.*, 827 F.3d 1363, 1373 (Fed. Cir. 2016) (quoting *Grp. One*, 254 F.3d at 1047).  "A sale occurs when there is a 'contract between parties to give and to pass rights of property for consideration which the buyer pays or promises to pay the seller for

the thing bought or sold.'" *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 595 F.3d 1340, 1361 (Fed. Cir. 2010).

Second, "ready for patenting" can "be shown by proof of 'reduction to practice' or 'drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention.'" *Helsinn*, 139 S. Ct. at 633 (quoting *Pfaff*, 525 U.S. at 67–68.

The Federal Circuit laid out what constitutes an anticipatory offer for sale in *Helsinn Healthcare S.A. v. Teva Pharms. USA, Inc.*, 855 F.3d 1356 (Fed. Cir. 2017).  It did not matter in that case that the FDA had yet to approve the products considered for purchase or that the products did not change hands at the time of the offer. *Id*. at 1365.  What mattered was that the parties had a binding agreement conditioned upon FDA approval, including specific terms such as price, method of payment, and method of delivery. *Id*.  This interpretation is in-line with the UCC definition of a sale. *See* UCC § 2-105(2) (A "purported present sale of future goods . . . operates as a contract to sell.").  It is a long-held tenet of patent law that the existence of a sales contract or the signing of a purchase agreement is sufficient for a finding that a device is on sale. *Buildex Inc. v. Kason Indus.*, 849 F.2d 1461, 1464 (Fed. Cir. 1988)

"When an accused product and the prior art are closely aligned, it takes exceptional linguistic dexterity to simultaneously establish infringement and evade invalidity." *01 Communique Lab., Inc. v. Citrix Sys., Inc.*, 889 F.3d 735, 742–43 (Fed. Cir. 2018).  "Where an accused infringer is clearly practicing only that which was in the prior art, and nothing more, and the patentee's proffered construction reads on the accused device, meeting [the]

■■■■■■■■■■■■■■■■■■■■■■■■

burden of [establishing invalidity] should not prove difficult." *Tate Access Floors v. Interface Architectural Res.*, 279 F.3d 1357, 1367 (Fed. Cir. 2002); *see also Vanmoor v. Wal–Mart Stores, Inc.*, 201 F.3d 1363, 1366 (Fed. Cir. 2000) ("Although [the accused infringers] bore the burden of proving that the cartridges that were the subject of the pre-critical date sales anticipated the [asserted] patent, that burden was satisfied by [the patent owner's] allegation that the accused cartridges infringe the [asserted] patent.").

## VI.   ARGUMENT

### A.   The HPHT EVDT was "on sale" before the '202 Patent's filing date.

The 2015 ■■■■■ contract between FMC and Shell established that the HPHT EVDT was "on sale" as of at least September 21, 2015—over eighteen months before the effective filing date of the '202 patent subject to the AIA—and there is no genuine dispute of material fact that it qualifies as prior art under AIA 35 U.S.C. § 102(a)(1).

The 2015 purchase contract "bears all the hallmarks of a commercial contract for sale." *Helsinn*, at 1364.  First, the purchase contract includes title page where it is styled as a ■■■■■■■■■■■■■ (Ex. 11 at 1.)  FMC and Shell are sophisticated parties and neither would have entered into an agreement called ■■■■■■■■■■■■ if it was not for the actual purchase of something.  Further, the ■■■■ contract includes recitals that declare it is the parties' intentions that FMC will supply HPHT EVDTs to Shell in accordance with the terms and conditions of the agreement.



(*Id.* at 2.)

Additionally, the 2015 ███████ contract includes other "hallmarks of a commercial contract for sale" such as detailed breakdowns of the specific parts and quantities sold along with the price that Shell agreed to pay for each.  For example, the portion of the of the 2015 ███████ contract shown below explains that FMC will deliver ███████ ███████ Tree, Tubing Hanger, and Tubing Head Assemblies, among other components, and that Shell agreed to pay ███████ for them.

██████████████████████████████

The 2015 ████ contract further includes specific delivery dates for each tree, as shown above in Section IV.G., and even includes a detailed payment schedule tied to project milestones █████████████████████████████ ████████████████. (*Id*. at 34-48.)  For example, the image below shows the milestone structure related to the production of the first HPHT EVDT.



The contracting parties' prior course of dealing is also instructive that the parties intended the 2015 ████ contract to be a binding sales agreement for the HPHT EVDTs. ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████. (Ex. 1 at ¶¶17-18; Ex. 10; Ex. 11.)  In fact, the very first page of the 2015 ████ contract states that it is a ████████████████████████████████ ████████████████████████████████████ ████████████████  As the Federal Circuit recently found when examining this issue,

██████████████████████████████

"rejecting an order would be unlikely given the parties' course of dealing." *Meds. Co. v. Hospira, Inc.*, 881 F.3d at 1351–53.

Furthermore, the sale to Shell was publicized September 22, 2015, the day after the 2015 agreement was signed. (Press Release, Ex. 23.)  FMC issued a press release stating FMC had received an award from Shell for its Appomattox field and that FMC would provide HPHT EVDTs for the field. (*Id*.)  The details of the sale or the specific structure of the HPHT EVDTs were not publicly disclosed, and neither do they have to be for the purposes of the on-sale bar. *Helsinn Healthcare S.A. v. Teva Pharm. USA, Inc.*, 855 F.3d 1356, 1370–71 (Fed. Cir. 2017) ("We conclude that, after the AIA, if the existence of the sale is public, the details of the invention need not be publicly disclosed in the terms of sale."), *aff'd*, 139 S. Ct. 628 (2019).

### B.   The HPHT EVDT was reduced to practice by September 2015

The law requires that for a product to meet the "on-sale" bar, in addition to being on-sale, it must also be "ready for patenting."  The Supreme Court has said that in this context "ready for patenting . . . could be shown by proof of reduction to practice or drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention." *Helsinn Healthcare S.A. v. Teva Pharm. USA, Inc.*, 139 S. Ct. at 633.

There is no genuine dispute of material fact that the HPHT EVDT was reduced to practice at the time of the 2015 ████████ contract's execution in September 2015. ████

███████████████████████████████████████████████████

███████████████████████████████████████████████████ (Ex.



1 at ¶¶11, 16-17.)

### C.  The HPHT EVDTs offered and sold to Shell anticipate the '202 patent

Assuming for the purposes of this motion that OSS's infringement allegations

against the ▉▉▉▉ HPHT EVDT are true,[5] then there is no genuine dispute of material

---

[5] To be clear, FMC has non-infringement arguments for all of the asserted claims of the '202 patent, and the material facts here are (1) that OSS has accused FMC's ▉▉▉▉ version; and (2) FMC's prior art ▉▉▉▉ version was materially the same.  FMC is simply holding OSS to

█████████████████████████████████

fact that the HPHT EVDTs as sold to Shell in September 2015 anticipated those same asserted claims of the '202 patent.

If the ████████ HPHT EVDT infringes the '202 patent, as assumed for the limited purposes of this motion, then the ████████ version is anticipatory prior art. In other words, if the accused ████████ version meets every element of the '202 patent's asserted claims, then the ████████ version necessarily meets every element of the same claims and therefore invalidates.  "A patent may not, like a 'nose of wax,' be twisted one way to avoid anticipation and another to find infringement." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001) (quoting *Sterner Lighting, Inc. v. Allied Elec. Supply, Inc.*, 431 F.2d 539, 544 (5th Cir. 1970) (citing *White v. Dunbar*, 119 U.S. 47, 51 (1886))).  There are cases in which "a patentee can— unintentionally—carry the alleged infringer's burden" in proving anticipation, such as when "the patentee alleges that a product on sale prior to the critical sales date infringes its patent." *Vanmoor v. Wal-Mart Stores, Inc.*, 201 F.3d 1363, 1366 (Fed. Cir. 2000).  Accused infringers can deny infringement yet at the same time "conced[e] infringement for purposes of the summary judgment motion and [an] on sale defense, properly pled in the alternative." *Id.* (citing *Evans Cooling Sys. Inc. v. General Motors Corp.*, 125 F.3d 1448, 1451 (Fed. Cir. 1997) *and* FED. R. CIV. P. 8(e)).

---

its views of the '202 patent for purposes of this motion, and does not suggest that the question of infringement of ████████████ is ripe for resolution.

████████████████████████████

### 1. Anticipation of Asserted Claim 1 of the '202 Patent

The first part of Claim 1 requires:

(1pre) A system for use in a subsea well application, comprising:

(1a) a monobore subsea installation having:

(1b) a **tubing head spool** disposed above a **wellhead**;

(1c) a **tubing hanger** engaged with the tubing head spool;

(1d) a **subsea tree** coupled to the tubing head spool over the tubing hanger and forming a **plenum region** between the tubing hanger and the subsea tree;

(1e) a **production stab** extending between the tubing hanger and the subsea tree, the production stab being sealed with respect to both the tubing hanger and the subsea tree;

The images below show how each of these claimed structures are understood to be alleged against the HPHT EVDT, and how the very same structures are found in the same arrangement in the prior art HPHT EVDTs offered and sold to Shell in 2015, which therefore necessarily meet the limitations of these claim elements in the same fashion.[6]

The annotations on the below images of the HPHT EVDTs offered and sold to Shell in 2015, which is a monobore subsea system, ████████████████████

████████████████████████████

████████████████████████████

████████████████████████████

---

[6] To the extent that OSS argues that FMC has mischaracterized how OSS has accused (or is planning to accuse) the HPHT EVDT of infringement, OSS should be precluded from doing so due to its failure to timely provide P.R. 3-3(c)-compliant infringement contentions, despite multiple requests by FMC for the same going back to December 2018 (2018-12-11 Ltr. to Fenton fr BVW re Need for Amd. Infr. Cont., Ex. 6; 2019-01-25 Ltr. to Fenton fr. Colvin re Document Request, Ex. 20; 2019-04-10 Ltr to OSS fr Winterle Demanding Dismissal-AEO, Ex. 21).



Claim 1 further requires:

(1f) an **annulus stab** extending between the tubing hanger and the subsea tree to provide an **isolated path** within the stab and through the plenum region, the isolated path further being routed through the subsea tree, through the annulus stab, and through the tubing hanger until exiting out through a side of the tubing hanger to the tubing head spool to accommodate **an annulus flow path** along the monobore subsea installation;

The following annotated CAD images show how each of these claimed limitations are alleged against the HPHT EVDT, and how the very same structures are found in the same arrangement in the prior art HPHT EVDTs offered and sold to Shell in 2015, which therefore meet the limitations of these claim elements in the same way.





15-18; Ex. 24, Ex. 1 at ¶8.)

██████████████████████████████████████

<u>Claim 1 further requires</u>:

      (1g) a **plurality of valves** disposed along the isolated path, the plurality of valves comprising at least one valve in the subsea tree along the isolated path and at least one valve in the tubing head spool along the isolated path.

The following annotated CAD images show how each of these claimed limitations are alleged against the HPHT EVDT design and how the very same structures are found in the same arrangement in the prior art HPHT EVDT as offered and sold to Shell in 2015, which therefore meets the limitations of these claim elements in the same way. ██████

████████████████████████████████████████████

████████████████████████████████████████████

█████████████████



[redacted]

### 2. Anticipation of Asserted Claims 2-8 of the '202 Patent

<u>Claim 2 additionally requires:</u>

> (2) The system as recited in claim 1, wherein the annulus stab comprises at least one tubing extending between a tubing hanger annulus flow passage in the tubing hanger and a subsea tree annulus flow passage in the subsea tree.

The annulus stab of the accused design and the prior art HPHT EVDTs offered and sold to Shell in 2015 are the same. (Ex. 1 at ¶22.)  To the extent that OSS construes this claim broad enough to read onto [redacted] [redacted] of the prior art HPHT EVDTs offered and sold to Shell in 2015 meets the same limitations in the same way.

The following annotated CAD image shows t[redacted] [redacted] (Ex. 1 at ¶¶22, 29-30; Ex 17; Ex. 18.) [redacted]

[redacted]



Claim 3 additionally requires:

(3) The system as recited in claim 2, wherein the subsea tree annulus flow passage is routed through the subsea tree from a bottom of the subsea tree to a top of the subsea tree.

The following annotated CAD images show how each of these claimed limitations are alleged against the HPHT EVDT, and how the very same structures are found in the same arrangement in the prior art HPHT EVDTs offered and sold to Shell in 2015, which therefore meets the limitations of this claim in the same way.  As shown, the subsea tree annulus flow passage (purple line) is routed through the subsea tree from the bottom to the top.  (cite dec and 3dpdfs.)



Subsea Tree
Annulus Flow

Claim 4 additionally requires:

> (4) The system as recited in claim 2, wherein the tubing hanger annulus flow passage is routed longitudinally through a wall of the tubing hanger until turning radially outward to the side of the tubing hanger and into a sealed region located in communication with a corresponding annulus flow passage in the tubing head spool.

The following annotated CAD images show how each of these claimed limitations are alleged against the HPHT EVDT design, and how the very same structures are found in the same arrangement in the prior art HPHT EVDTs offered and sold to Shell in 2015, which therefore meets the limitations of these claim elements in the same way.

34



Claim 5 additionally requires:

> (5) The system as recited in claim 4, wherein the corresponding annulus flow passage is placed in communication with an annulus between a well tubing and a casing extending down below the tubing hanger to form an overall annulus flow passage through the monobore subsea installation.

The following annotated CAD images show how each of these claimed limitations are alleged against the HPHT EVDT design, and how the very same structures are found in the same arrangement in the prior art HPHT EVDTs offered and sold to Shell in 2015, which therefore meets the limitations of these claim elements in the same way. ■■■

■■■

■■■



Claims 6 and 7 additionally require:

> (6) The system as recited in claim 5, further comprising a plurality of valves disposed along the overall annulus flow passage.

> (7) The system as recited in claim 6, wherein at least two valves of the plurality of valves are disposed along the corresponding annulus flow passage through the tubing head spool.

As described and shown in the discussion of claim limitation 1g, the prior art HPHT

EVDTs offered and sold to Shell in 2015 have ███████████████████████

███████████████████     ███████████████████████████

███████████████████████████████████████

████████████████████████████████████████

Claim 8 additionally requires:

> (8) The system as recited in claim 1, wherein the annulus stab comprises a plurality of annulus stabs for conducting flow along the isolated path.

As described and shown in the discussion of Claim 2, the accused product and the prior art HPHT EVDTs offered and sold to Shell in 2015 use ████████████████ ████████████████   To the extent OSS alleges that this claim is broad enough to cover passageways in the accused design, then OSS necessarily also sweeps in the prior art that, as shown, has the same configuration and therefore meets the limitations in the same way.[7]

### 3. Anticipation of Asserted Claim 9 of the '202 Patent

Independent Claim 9 requires:

> (9pre) A system, comprising:
>
> (9a) a subsea installation comprising a tubing hanger and a subsea tree mounted above the tubing hanger and forming a plenum region between the tubing hanger and the subsea tree,
>
> (9b) the subsea installation comprising a central monobore production passage and an installation annulus passage,
>
> (9c) the central monobore production passage being defined in part by a production stab extending from the subsea tree to the tubing hanger, the production stab being sealed with respect to both the subsea tree and the tubing hanger,

---

[7] Six weeks ago FMC sent OSS a letter demanding that OSS drop Claims 8 and 11.  (2019-03-08 Ltr. to Slayden and Fenton re Claims 8 & 11, Ex. 25).  FMC noted that OSS had drawings and discovery responses for about three weeks that showed, as OSS had requested, that no accused HPHT EVDT design met OSS's interpretation requiring "two or more annulus stabs."  Despite FMC's request that OSS provide a basis for its allegations if it disagreed, OSS simply replied on March 25 that they "are not dropping Claims 8 or 11 and will supplement their interrogatory response as requested." (2019-3-25 Eml fr. Fenton, Ex. 26)  FMC has yet to receive any updated discovery responses or an otherwise substantive response, indicating OSS lacks any basis whatsoever for asserting these two claims.

(9d) the installation annulus passage being defined in part by an annulus stab extending from the subsea tree to the tubing hanger to isolate annulus flow of well fluid to an interior of the annulus stab,

(9e) the installation annulus passage being further defined by a tubing hanger annulus flow passage routed through the tubing hanger until exiting out through a side of the tubing hanger to thus protect the plenum region from exposure to the well fluid,

(9f) the subsea installation further comprising a control line extending through the plenum region and comprising control line sections joined by a pair of mating control line connectors.

Of these limitations, 9pre through 9e recite limitations that are materially the same as discussed above with respect to claim 1. That discussion showed that prior art HPHT EVDTs offered and sold to Shell in 2015 meet these limitations in necessarily the same way OSS alleges to be infringing, and, to the extent necessary, that discussion is incorporated here by reference. Limitation 9f includes requirements for a "control line" that are not found in Claim 1, but are nevertheless found in the prior art HPHT EVDTs offered and sold to Shell in 2015 in the same way as accused. (Ex. 17; Ex. 18)

The annotated CAD images below show how control lines are passed through what can be considered a "plenum region" in both the accused design and the prior art HPHT EVDTs offered and sold to Shell in 2015, which therefore meets the limitations of this claim element in the same way.



### 4.   Anticipation of Asserted Dependent Claims 10-14

Claims 10 additionally requires:

> (10) The system as recited in claim 9, wherein the annulus stab comprises a tube coupled between the subsea tree and the tubing hanger.

As discussed in the discussion of claim 2 above, the prior art HPHT EVDTs offered and sold to Shell in 2015 have the same device OSS contends is a "tube" coupled between the subsea tree and the tubing hanger in the accused HPHT EVDT.  As OSS alleges that this claim is broad enough to cover ███████████████████████████ in the accused design, then OSS necessarily also sweeps in the prior art that, as shown, has

██████████████████████████████████████████

the same configuration and would therefore meet the claim under OSS's interpretation in the same way.

Claim 11 additionally requires:

> (11) The system as recited in claim 10, wherein the annulus stab comprises a plurality of annulus stabs.

As discussed and shown in the discussion of Claim 8, to the extent OSS alleges that this claim is broad enough to cover the annulus path design in the accused design, then OSS necessarily also sweeps in the prior art that, as shown, has the same configuration and would therefore meet the claim under OSS's apparent interpretation in the same way.

Claim 12 requires:

> (12) The system as recited in claim 9, wherein the production stab is disposed along a longitudinal center of the subsea installation.

As shown in the figures used in the discussion of limitation 1e, the production portion of ██████████████████ of the prior art HPHT EVDTs offered and sold to Shell in 2015 have ████████████████████████████ (Ex 17; Ex. 18.)

Claims 13 additionally requires:

> (13) . . . wherein the annulus stab comprises a tube which extends between the tubing hanger annulus flow passage in the tubing hanger and a subsea tree annulus flow passage within the subsea tree.

As discussed and shown in the discussion of claim 2 above, the prior art HPHT EVDTs offered and sold to Shell in 2015 have what OSS apparently is contending to be a "tube which extends between" the subsea tree's annulus flow passage and the tubing hanger's annulus flow passage in the same way as the accused product. As OSS alleges

that this claim is broad enough to cover the annulus path in the accused design then OSS

necessarily also sweeps in the prior art that, as shown, has the same configuration and

would therefore meet the claim under OSS's apparent interpretation in the same way.

<u>Claims 14 additionally requires</u>:

> (14) The system as recited in claim 13, wherein the tubing hanger annulus flow passage is routed longitudinally through a wall of the tubing hanger until turning radially outward to the side of the tubing hanger and into a sealed region located in communication with a corresponding annulus flow passage in a tubing head spool.

The prior art HPHT EVDTs offered and sold to Shell in 2015 meet this claim as

shown in the discussion of claim 4 above.

## VII.  CONCLUSION

For the reasons stated, FMC asks the Court to grant its motion for summary

judgement that OSS's asserted claims identified pursuant to P.R. 3-1(a) are invalid.

Respectfully submitted,

FMC TECHNOLOGIES, INC.

By its attorneys,

By: ___ */s/ Bret Winterle*
    Bret Winterle
    TX Bar No. 24084249
    winterle@fr.com
    **FISH & RICHARDSON P.C.**
    1717 Main Street Suite 5000
    Dallas, TX 75201
    Telephone: (214) 747-5070

    Ruffin B. Cordell
    TX Bar No. 04820550
    cordell@fr.com
    Indranil Mukerji

MA Bar No. 644059
mukerji@fr.com
**FISH & RICHARDSON P.C.**
1425 K Street NW, Suite 1100
Washington, DC 20005
Telephone:  (202) 783-5070
Facsimile:   (202) 783-2331

**ATTORNEYS FOR
PLAINTIFF/COUNTERCLAIM
DEFENDANT FMC TECHNOLOGIES,
INC.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and

foregoing document has been served on April 19, 2019, to all counsel of record who are

deemed to have consented to electronic service via the Court's CM/ECF system per

Local Rule CV-5(a)(3).

*/s/ Bret T. Winterle*
Bret T. Winterle