**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| FMC TECHNOLOGIES, INC., | § | |
| | § | |
| Plaintiff / Counterclaim | § | |
| Defendant, | § | |
| | § | Civil Action No. 4-18-cv-2459 |
| vs. | § | |
| | § | JURY TRIAL DEMANDED |
| ONESUBSEA IP UK LIMITED & | § | |
| ONESUBSEA LLC, | § | |
| | § | |
| Defendants / Counterclaim Plaintiffs, | § | |
| and | § | |
| | § | |
| ONESUBSEA UK LIMITED & | § | |
| CAMERON INTERNATIONAL | § | |
| CORPORATION, | § | |
| | § | |
| Defendants. | § | |

**ONESUBSEA'S OPPOSITION TO FMC'S MOTION FOR
SUMMARY JUDGMENT OF INVALIDITY AND CROSS-MOTION FOR
PARTIAL SUMMARY JUDGMENT OF NO INVALIDITY**

# REDACTED

## **TABLE OF CONTENTS**

I.     NATURE AND STAGE OF THE PROCEEDINGS ................................................ 1

II.    STATEMENT OF ISSUES ................................................................................. 2

III.   SUMMARY OF THE ARGUMENT ................................................................... 2

IV.   LEGAL STANDARD ......................................................................................... 3

     A.      Summary Judgment ................................................................................ 3

     B.      35 U.S.C. § 102(a)(1) (Post-AIA) ......................................................... 4

          1.      Legal Precedent Interpreting Pre-AIA § 102(b) Applies ............................................................................... 4

          2.      Third-Party Offers/Sales Implicate the "Public Use" Provision of § 102(a)(1)—Not the "On-Sale" Provision ................................................................................ 5

          3.      Secret or Confidential Third-Party Offers/Sales are Not Invalidating Under § 102's Public Use Provision ..................... 6

          4.      Where the § 102 On-Sale Bar Is Applicable, a Product Embodying the Invention Must Be "On Sale" and "Commercially Marketed" to Trigger the Bar ................................ 6

V.     ARGUMENT AND AUTHORITIES ................................................................. 8

     A.      OneSubsea Disclosed its Design in Exchange for a United States Patent ........................................................................................... 8

     B.      OneSubsea Is Entitled to Partial Summary Judgment of No Invalidity (Cross Motion) ..................................................................... 8

     C.      FMC's Motion Fails Because the On-Sale Provision of 35 U.S.C. § 102(a)(1) Does Not Apply, FMC Fails to Show Any Use of a Product Embodying All Limitations of the '202 Invention, and a Secret or Confidential Sale by Third Parties Cannot Invalidate the '202 Patent Under the Public Use Provision as a Matter of Law ....................................................... 10

     D.      FMC's Alleged Confidential Sale/Offer for Sale Is Not Invalidating Because the Alleged Sale Documents Do Not Identify a Product That Embodies Each Claim of the '202 Patent ................................................................................................ 14

          1.      FMC's Documentary Evidence Does Not Identify a Product That Embodies Each Claim of the '202 Patent ................... 15

REDACTED

REDACTED

2.    FMC's Declarant Does Not Identify a Product That Embodies Each Claim of the '202 Patent ........................................ 16

E.    FMC's Product Design Was Incomplete and Uncertain Until After the Filing Date of the '202 Patent ...................................................... 19

F.    FMC's HPHT Product Was Not "On Sale" Prior to the Filing Date of the '202 Patent ................................................................................ 22

G.    OneSubsea Maintained Infringement Allegations in Good Faith ................................................................................................................ 24

H.    FMC Continues to Assert Trade Secret Protection Over Its HPHT Product Design ...................................................................................... 26

VI.    ONESUBSEA OBJECTS TO FMC'S EVIDENCE ............................................. 27

A.    Objections to Exhibit 1 – Allison Weber Declaration ................................ 27

B.    Objections to Exhibit 7 – Presentation Entitled "REDACTED" .............................................................................. 30

C.    Objections to Exhibit 8 – Untitled/Undated Presentation ........................... 30

D.    Objections to Exhibit 9 – Presentation Entitled "REDACTED" ............................................................................ 30

E.    Objections to Exhibit 10 – 2014 Long-Lead Purchase Order .................... 31

F.    Objections to Exhibit 11 – 2015 Variation Order Request (VOR) ................................................................................................................ 31

G.    Objections to Exhibit 12 – Presentation Entitled "REDACTED" ............................................................................ 31

H.    Objections to Exhibits 15 and 17 – Undated CAD Drawings REDACTED ......................................................................................... 31

I.    Objections to Exhibits 16 and 18 – Undated CAD Drawings .................... 32

J.    Objections to Exhibit 22 – FMC's Unverified Interrogatory Responses ........................................................................................................ 32

K.    Objections to Exhibit 24 – An Engineering Drawing ................................. 33

VII.    CONCLUSION ..................................................................................................... 34

REDACTED

REDACTED

# TABLE OF AUTHORITIES

CASES

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242 (1986)...................................................................................... 4, 15

*Baxter Int'l, Inc. v. COBE Labs., Inc.*,
 88 F.3d 1054 (Fed. Cir. 1996).............................................................................. 6

*Brady v. Blue Cross & Blue Shield of Tex., Inc.*,
 767 F. Supp. 131 (N.D. Tex. 1991) .................................................................... 32

*Clock Spring, L.P. v. Wrapmaster, Inc.*,
 560 F.3d 1317 (Fed. Cir. 2009)............................................................................. 6

*Dey, L.P. v. Sunovion Pharms., Inc.*,
 715 F.3d 1351 (Fed. Cir. 2013).......................................................................... 6, 12

*Elan Corp., PLC v. Andrx Pharm., Inc.*,
 366 F.3d 1336 (Fed. Cir. 2004)............................................................................ 7, 19

*Helsinn Healthcare S.A. v. Teva Pharms. USA, Inc.*,
 139 S. Ct. 628 (2019) ........................................................................................ 4, 7

*In re Caveney*,
 761 F.2d 671 (Fed. Cir. 1985)........................................................... 5, 10, 13, 19

*Invitrogen Corp. v. Biocrest Mfg., L.P.*,
 424 F.3d 1374 (Fed. Cir. 2005)............................................................................. 6

*Kewanee Oil Co. v. Bicron Corp.*,
 416 U.S. 470 (1974)............................................................................................ 13

*Medicines Co. v. Hospira, Inc. ("Medicines I")*,
 827 F.3d 1363 (Fed. Cir. 2016) (*en banc*) ..................................................... 7, 22, 24

*Motionless Keyboard Co. v. Microsoft Corp.*,
 486 F.3d 1376 (Fed. Cir. 2007)......................................................................... 9, 11

*Neutrino Dev. Corp. v. Sonosite Inc.*,
 337 F. Supp. 2d 942 (S.D. Tex. 2004) .................................................................. 3

*Paulik v. Rizkalla*,
 760 F.2d 1270 (Fed. Cir. 1985) (*en banc*) ........................................................ 13

REDACTED

REDACTED

*Pfaff v. Wells Elecs., Inc.*,
    525 U.S. 55, 67 (1998) ............................................................... 7, 8, 19, 20, 22

*Profectus Tech. LLC v. Huawei Techs. Co., Ltd.*,
    823 F.3d 1375 (Fed. Cir. 2016) ................................................................... 2

*ResQNet.com, Inc. v. Lansa*,
    594 F.3d 860 (Fed. Cir. 2010) ................................................ 5, 10, 11, 15, 16

*Schlumberger Tech. Corp. v. BICO Drilling Tools, Inc.*,
    No. 4:17-cv-3211, 2019 WL 2450948 (S.D. Tex. June 12, 2019) ................... 5, 10, 12

*Solvay S.A. v. Honeywell Int'l Inc.*,
    742 F.3d 998 (Fed. Cir. 2014) ................................................................. 14

*Space Systems/Loral, Inc. v. Lockheed Martin Corp.*,
    271 F.3d 1076 (Fed. Cir. 2001) .................................................. 8, 19, 20, 22

*Sparton Corp. v. U.S.*,
    399 F.3d 1321 (Fed. Cir. 2005) .................................................. 7, 14, 15, 18

*Spectrum Pharm., Inc. v. Sandoz Inc.*,
    802 F.3d 1326 (Fed. Cir. 2015) ................................................................... 3

*SRAM Corp. v. AD-II Eng'g, Inc.*,
    465 F.3d 1351 (Fed. Cir. 2006) ................................................................... 3

*W.L. Gore & Assocs. v. Garlock, Inc.*,
    721 F.2d 1540 (Fed. Cir. 1983) ......................................................... 6, 12, 13

*Woodland Trust v. Flowertree Nursery, Inc.*,
    148 F.3d 1368 (Fed. Cir. 1988) ................................................ 3, 6, 12–14, 27

*ZUP, LLC v. Nash Mfg., Inc.*,
    896 F.3d 1365 (Fed. Cir. 2018) ................................................................... 2

**STATUTES AND RULES**

35 U.S.C. § 102 ..............................................................................*passim*

35 U.S.C. § 281 ................................................................................. 3

Fed. R. Civ. P. 56(a) ......................................................................... 4, 15

Patent Local Rule 3-4(b)......................................................................... 25

REDACTED

REDACTED

## SUMMARY JUDGMENT EVIDENCE

| Ex. | Appendix Pages | Description of Evidence |
|---|---|---|
| A | 1–35 | Transcript Excerpts of Deposition of Allison Weber, FMC Lead Engineer on the HPHT EVDT development project |
| B | 36–37 | May 2, 2019 Email Colvin to Fenton |
| C | 38–40 | Dec. 21, 2018 Ltr Fenton to Winterle |
| D | 41–43 | Apr. 17, 2019 Ltr. Fenton to Winterle |
| E | 44–46 | Apr. 30, 2019 Ltr. Colvin to Fenton |

REDACTED

REDACTED

Counterclaim Plaintiffs OneSubsea IP UK Limited and OneSubsea LLC ("OneSubsea") oppose FMC's motion for summary judgment of invalidity of U.S. Patent No. 9,945,202 ("the '202 Patent") (Dkt. 107) and cross-move for partial summary judgment of no invalidity based on FMC's Shell Appomattox project.

## I.   NATURE AND STAGE OF THE PROCEEDINGS

In 2015, certain OneSubsea entities sued FMC Technologies, Inc. ("FMC") in the Eastern District of Texas alleging infringement of a set of patents not at issue here. *OneSubsea IP UK Ltd. and OneSubsea UK Ltd. v. FMC Techs., Inc.*, Case No. 2-15-cv-445-JRG (filed Mar. 30, 2015).   FMC counterclaimed asserting infringement of two patents, including U.S. Patent No. 6,715,554 ("the '554 Patent"). Judge Gilstrap transferred the original case to the Southern District of Texas, which assigned a new case number, 4:16-cv-00051 ("'051 Case").   The case was stayed by this Court on August 30, 2016 pending resolution of a number of *inter partes* review proceedings pending before the U.S. Patent and Trademark Office challenging patents asserted in the case.   '051 Case, Dkt. 158.

On June 27, 2018, FMC filed a motion to lift the stay to allow FMC to seek a preliminary injunction preventing OneSubsea from participating in a tender process with a big oil company on the theory that OneSubsea's design infringed FMC's '554 Patent.   '051 Case Dkt. 165.   This Court severed FMC's infringement claim as to the '554 Patent from the '051 Case into the above-captioned case.   '051 Case Dkt. 169.   OneSubsea identified a patent in its portfolio that read on FMC's new EVDT design and filed a supplemental counterclaim alleging infringement of U.S. Patent No. 9,945,202 ("the '202 Patent").

REDACTED

REDACTED

OneSubsea and Cameron then moved for partial summary judgment of non-infringement of the '554 Patent because OneSubsea's 2018 tender offer could not infringe under 35 U.S.C. § 271(i) due to the impending expiration of the '554 Patent. Dkt. 46. The Court granted partial summary judgment of non-infringement. Dkt. 55. FMC never filed its motion for preliminary injunction on the '554 Patent, which expired in 2018.

## II.   STATEMENT OF ISSUES

Whether a secret purchase order between FMC and a party unrelated to the patentee was an invalidating "on sale" or "public use" event under 35 U.S.C. § 102(a)(1) (post-AIA) where FMC completed and validated its design and delivered its first product in 2018, which is (1) years after the secret purchase order and (2) after the effective filing date of the '202 Patent on March 27, 2017 ("Critical Date")?

The Court of Appeals for the Federal Circuit reviews a grant of summary judgment under the law of the regional circuit. *ZUP, LLC v. Nash Mfg., Inc.*, 896 F.3d 1365, 1360 (Fed. Cir. 2018). "The Fifth Circuit reviews de novo a district court's grant of summary judgment." *Profectus Tech. LLC v. Huawei Techs. Co., Ltd.*, 823 F.3d 1375, 1379 (Fed. Cir. 2016).

## III.   SUMMARY OF THE ARGUMENT

FMC's motion for summary judgment applies the wrong legal standard (the "on sale" standard) and fails to prove invalidity under that standard or the proper standard, *i.e.*, the "public use" standard. Under the proper "public use" standard, FMC cannot prove invalidity because the first HPHT EVDT was not delivered to Shell REDACTED and could not therefore have been "used" until after the critical date. Even under the "on sale"

REDACTED

REDACTED

standard, FMC failed to prove invalidity because the record evidence does not show the HPHT EVDT was complete, final, or the subject of the 2015 Variation Order Request (VOR) REDACTED . FMC's HPHT EVDT design was not fully qualified or released for sale until REDACTED . FMC failed to marshal clear and convincing evidence of invalidity. Instead, FMC's evidence proves the Shell Appomattox project is not prior art and partial summary judgment of no invalidity is appropriate.

## IV.   LEGAL STANDARD

### A.   Summary Judgment

"When evaluating a motion for summary judgment, the court views the record evidence through the prism of the evidentiary standard of proof that would pertain at a trial on the merits." *SRAM Corp. v. AD-II Eng'g, Inc.*, 465 F.3d 1351, 1357 (Fed. Cir. 2006). A patent is presumed valid under 35 U.S.C. § 282. *Spectrum Pharm., Inc. v. Sandoz Inc.*, 802 F.3d 1326, 1333 (Fed. Cir. 2015).  To obtain summary judgment of invalidity, the movant must overcome the presumption of validity with clear and convincing evidence. *Id.*  "[U]ncorroborated oral testimony, particularly that of interested persons recalling long past events, does not, of itself provide the clear and convincing evidence required to invalidate a patent . . . ." *Woodland Trust v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1369 (Fed. Cir. 1988); *Neutrino Dev. Corp. v. Sonosite Inc.*, 337 F. Supp. 2d 942, 947 (S.D. Tex. 2004).  "Thus, a moving party seeking to invalidate a patent at summary judgment must submit such clear and convincing evidence of facts underlying invalidity that no reasonable jury could find otherwise.'" *SRAM Corp.*, 465 F.3d at 1357.  Summary judgment is only appropriate when, drawing all reasonable inferences in favor of the nonmovant, there is

REDACTED

REDACTED

"no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### B.   35 U.S.C. § 102(a)(1) (Post-AIA)

#### 1.   *Legal Precedent Interpreting Pre-AIA § 102(b) Applies*

Legal precedent interpreting pre-AIA 35 U.S.C. § 102(b) applies in this case.  In 2011, Congress enacted the America Invents Act ("AIA") which amended, *inter alia*, 35 U.S.C. § 102. *See Helsinn Healthcare S.A. v. Teva Pharms. USA, Inc.*, 139 S. Ct. 628, 633 (2019).  The parties do not dispute the '202 Patent—filed after the AIA took effect—is subject to the provisions of the AIA, including current § 102(a)(1). *See* Mot. at 3 (stating anticipation is evaluated under the AIA version of 35 U.S.C. § 102(a)(1)).  In *Helsinn*, the Supreme Court recognized the "substantial body of law interpreting [pre-AIA] § 102[(b)]'s on-sale bar" (*id.* at 633) and held "that Congress did not alter the meaning of 'on sale' when it enacted the AIA" (*id.* at 634).  Accordingly, citation to pre-AIA § 102(b) "on-sale bar" legal precedent is appropriate when analyzing the current § 102(a)(1).

Although *Helsinn* did not expressly address whether the AIA changed the "public use" provision of § 102, the Court's reasoning suggests the AIA did not.  This is because (1) the pre- and post-AIA § 102 statutes both use the phrase "public use" (*compare* 35 U.S.C. § 102(a)(1) (post-AIA), *with* 35 U.S.C. § 102(b) (pre-AIA)); and (2) the Court "presume[s] that when Congress reenacted the same language in the AIA, it adopted the earlier judicial construction of that phrase."  *Helsinn*, 139 S. Ct. at 633–34 (discussing

REDACTED

REDACTED

phrase "on sale"). Thus, citation to pre-AIA § 102(b) "public use" legal precedent is appropriate when analyzing the current § 102(a)(1).

2.   **Third-Party Offers/Sales Implicate the "Public Use" Provision of § 102(a)(1)—Not the "On-Sale" Provision**

According to long-standing Federal Circuit precedent:

> The "on sale" provision of 35 U.S.C. § 102(b) is directed at precluding *an inventor* from commercializing his invention for over a year before he files his application. *Sales and offers for sale made by others and disclosing the claimed invention implicate the "public use" provision of 35 U.S.C. § 102(b).*

*ResQNet.com, Inc. v. Lansa*, 594 F.3d 860, 866 (Fed. Cir. 2010) (emphasis added); *In re Caveney*, 761 F.2d 671, 675, n.5 (Fed. Cir. 1985) ("Sales or offers made by others and disclosing the claimed invention implicate the 'public use' provision of 35 U.S.C. § 102(b)."). This precedent was recently recognized and adopted in this district by Judge Gray Miller. *See Schlumberger Tech. Corp. v. BICO Drilling Tools, Inc.*, No. 4:17-cv-3211, 2019 WL 2450948, at *6–9 (S.D. Tex. June 12, 2019). In *Schlumberger*, Judge Miller performed an in-depth review of the relevant case law and adopted the rule of *Caveney* and *ResQNet.com*—*i.e.*, the activities of third parties unrelated to the patentee should be analyzed under the "public use" provision of § 102. *Id.* at *6 ("These cases indicate that the court should not be concerned with the on-sale bar analysis and instead should determine whether [the third-party] activities constitute public use."); *id.* at *9 ("Neither [*Helsinn* nor *Medicines I*] changed the Federal Circuit's guidance from *ResQNet.com* and *In re Caveney* that the [third-party] sales in cases like the instant case should be analyzed under the public use prong.").

REDACTED

REDACTED

### 3.   Secret or Confidential Third-Party Offers/Sales are Not Invalidating Under § 102's Public Use Provision

"To decide whether a prior use constitutes an invalidating 'public use,' we ask whether the purported use: (1) was accessible to the public; or (2) was commercially exploited." *Dey, L.P. v. Sunovion Pharms., Inc.*, 715 F.3d 1351, 1355 (Fed. Cir. 2013).  In either case, a "public use" must be (1) a "use" of all claims of the invention, and (2) available to the public.  *See Clock Spring, L.P. v. Wrapmaster, Inc.*, 560 F.3d 1317, 1325 (Fed. Cir. 2009) ("In order for a use to be public within the meaning of § 102(b), there must be a public use with all of the claim limitations."); *Woodland Trust*, 148 F.3d at 1371 (prior use must be "available to the public"); *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1380 (Fed. Cir. 2005) ("Commercial exploitation . . . likely requires more than, for example, a secret offer for sale.").  Thus, secret or confidential sales and uses by third parties do not invalidate later filed patents. *See Dey*, 715 F.3d at 1355 ("secret or confidential third party uses do not invalidate later-filed patents"); *Woodland Trust*, 148 F.3d at 1371 ("when an asserted prior use is not that of the applicant, § 102(b) is not a bar when that prior use or knowledge is not available to the public"); *W.L. Gore & Assocs. v. Garlock, Inc.*, 721 F.2d 1540, 1549–50 (Fed. Cir. 1983); *see also Baxter Int'l, Inc. v. COBE Labs., Inc.*, 88 F.3d 1054, 1061 (Fed. Cir. 1996) (Newman, J., dissenting) (section 102(b) does not cover "unknown and unknowable information in the possession of third persons").

### 4.   Where the § 102 On-Sale Bar Is Applicable, a Product Embodying the Invention Must Be "On Sale" and "Commercially Marketed" to Trigger the Bar

REDACTED
REDACTED

In *Pfaff v. Wells Elecs., Inc.*, the Supreme Court found that for the "on-sale bar" of § 102 to apply, "the ***product*** must be the subject of a commercial offer for sale" before the critical date.  525 U.S. 55, 67 (1998) (emphasis added).  Thus, a patent challenger must prove with clear and convincing evidence that a ***product*** (which meets every limitation of each patent claim) was "on sale" before the critical date.  *Id.*  More recently, the Federal Circuit, sitting *en banc* and citing *Pfaff*, confirmed that to trigger the § 102 "on sale" provision, "the transaction must be one in which the product is 'on sale' in the sense that it is 'commercially marketed.'"  *Medicines Co. v. Hospira, Inc.*, 827 F.3d 1363, 1374 (Fed. Cir. 2016) ("*Medicines I*"); *see also Helsinn*, 139 S. Ct. at 634 ("Congress did not alter the meaning of 'on sale' when it enacted the AIA.").  Moreover, the *en banc Medicines I* court reemphasized the requirement for a "'commercial sale' of the product itself" to trigger the on-sale bar.  *Medicines I*, 827 F.3d at 1374.

The terms of the offer control and must include a product embodying the claims. *Sparton Corp. v. U.S.*, 399 F.3d 1321, 1325 (Fed. Cir. 2005) ("[T]he only offer for sale was of the unpatented release plate . . . .").  Vague, pre-commercial communications related to a product cannot trigger an "on sale" bar.  *Elan Corp., PLC v. Andrx Pharm., Inc.*, 366 F.3d 1336, 1341 (Fed. Cir. 2004) (not an invalidating offer for sale where the communication lacked "quantities, time of delivery, place of delivery, or product specifications beyond the general statement that the potential product would be a 500 mg once-daily tablet.").

REDACTED

REDACTED

Even an offer of an embodying product will not bar a later-filed patent if there are "aspect[s] of the invention" that are developed "after the offer for sale." *Pfaff*, 525 U.S. at 68 n.14. Similarly, an offer will not bar a later-filed patent if the product is of a complex design requiring design validation. *See Space Systems/Loral, Inc. v. Lockheed Martin Corp.*, 271 F.3d 1076, 1080 (Fed. Cir. 2001). "The fact that a concept is eventually shown to be workable does not retrospectively convert the concept into one that was 'ready for patenting' at the time of conception." *Id.* at 1081 (citing *Pfaff*).

## V.     ARGUMENT AND AUTHORITIES

### A.     OneSubsea Disclosed its Design in Exchange for a United States Patent

On March 27, 2017, David June and Claudio Santilli of OneSubsea filed a United States Patent application disclosing a novel arrangement for a subsea completion system. The United States Patent and Trademark Office thoroughly examined that patent application and issued the '202 Patent (Ex. 2[1]) to OneSubsea on April 17, 2018. The '202 Patent issued just prior to FMC's unsuccessful tender to Chevron for the Anchor/Tigris project and a few months prior to FMC's failed attempt to enjoin OneSubsea from participating in, and ultimately winning, that tender process.

### B.     OneSubsea Is Entitled to Partial Summary Judgment of No Invalidity (Cross Motion)

FMC filed its motion for summary judgment far in advance of the close of discovery and well before the deadline for dispositive motions. FMC insists the only relevant

---

[1] References to exhibits 1 through 26 are references to attachments to FMC's motion (Dkt. 107). Lettered exhibits are included in OneSubsea's appendices.

REDACTED

REDACTED

evidence is before the Court and refused further discovery by OneSubsea into FMC's
alleged prior art sale.  FMC not only fails to prove invalidity (*see infra* Parts V.C–V.H)
the record evidence proves the HPHT EVDT is not prior art as a matter of law.  OneSubsea
therefore asks the Court to enter partial summary judgment of no invalidity due to the
HPHT EVDT design work or FMC's Appomattox activities and eliminate this issue from
the case.

The following undisputed facts prove FMC's HPHT EVDT is not prior art.

**SF1**.   Neither Shell nor FMC is related to the patentee, OneSubsea IP UK Limited.

**SF2**.   The intended use of an HPHT EVDT system is to control the flow of fluids
in or out of a subsea well.  Ex. 14 at 10 (identifying, *e.g.*, subsea "production trees" and
"injection trees"); Ex. 2, '202 Patent, 1:7–25.

**SF3**.   The first HPHT EVDT system was delivered REDACTED after the March 27,
2017 filing date of the '202 Patent.  Weber Dep. A19:2–16.[2]

As explained *supra* in Part IV.B.2, a sale/offer by a third party implicates the "public
use" provision of 35 U.S.C. § 102(a)(1) and not the "on sale" provision.  Here, neither Shell
nor FMC is related to the patentee, OneSubsea IP UK Limited.  **SF1**.  A "public use"
requires an actual "use" of a physical embodiment of the invention.  *See Motionless
Keyboard Co. v. Microsoft Corp.*, 486 F.3d 1376, 1385 (Fed. Cir. 2007); *see also* Part V.C,
*infra*.  The intended use of an HPHT EVDT system is to control the flow of fluids in or out
of a subsea well.  **SF2**.  However, the first HPHT EVDT system was delivered REDACTED,

---

[2] Page numbers prefixed with an "A" refer to the attached appendix of evidence.

REDACTED

REDACTED

after the March 27, 2017 filing date of the '202 Patent.  **SF3**.  Therefore, the HPHT EVDT

system was not in "use" before the filing date of the '202 Patent and is therefore not prior

art.  On these facts and in view of controlling law, partial summary judgment of no

invalidity due to the Appomattox project is appropriate.

> **C.**     **FMC's Motion Fails Because the On-Sale Provision of 35 U.S.C. § 102(a)(1) Does Not Apply, FMC Fails to Show Any Use of a Product Embodying All Limitations of the '202 Invention, and a Secret or Confidential Sale by Third Parties Cannot Invalidate the '202 Patent Under the Public Use Provision as a Matter of Law**

This Court should deny FMC's motion because it seeks invalidation of the '202

Patent solely under the on-sale provision of 35 U.S.C. § 102(a)(1)—but that provision is

inapplicable to third-party offers/sales that do not involve the inventor.[3]  As discussed

above (Part IV.B.2), "[s]ales and offers for sale made by others and disclosing the claimed

invention implicate the 'public use' provision of 35 U.S.C. § 102(b)" whereas "[t]he 'on

sale' provision . . . is directed at precluding *an inventor* from commercializing his invention

for over a year before he files his application."  *ResQNet.com*, 594 F.3d at 866 (emphasis

added); *In re Caveney*, 761 F.2d at 675, n.5; *accord Schlumberger*, 2019 WL 2450948, at

*6–9.  Here, FMC alleges only that the transaction between FMC and Shell is invalidating

under the ***on-sale*** provision of 35 U.S.C. § 102(a)(1).  *See* Mot. at 18–21 (Part V.B

---

[3] At page 19 of the Motion, FMC crops a quote from the Supreme Court's *Helsinn* decision, leaving out the important words bolded here: "**an inventor's sale of an invention** to a third party who is obligated to keep the invention confidential can qualify as prior art under § 102(a)."  Properly quoted, *Helsinn* is consistent with long-standing precedent that secret sales *by the inventor* may bar her later patent application.  *Helsinn* does not suggest the on-sale bar is implicated when the inventor is not a party to alleged prior art transaction.

REDACTED

REDACTED

discussing "on sale bar" law), 21–26 (Part VI arguing "The HPHT EVDT was 'on sale' before the '202 Patent's filing date). But neither FMC nor Shell is an inventor of the '202 Patent. Thus, FMC's analysis is legally flawed and should be denied because it relies on the wrong legal test—*i.e.*, "on sale" rather than "public use." *See, e.g., ResQNet.com*, 594 F.3d at 866.

If the Court considers FMC's motion under the public use provision, FMC's motion fails for at least two reasons. First, FMC has not presented any evidence—much less clear and convincing evidence—that anyone *used* the invention prior to the Critical Date. Under Federal Circuit precedent, an invention is "not in public use as the term is used in section 102(b)" where the invention was "visually displayed . . . without putting it in use." *Motionless Keyboard*, 486 F.3d at 1385. In other words, an actual "use" of the patented in invention is required. *Id.* Here, FMC must show that the '202 Patent's "system for use in a subsea well application" was actually used—*e.g.*, to produce oil from a well. The documents FMC submits with its motion—design presentations, the 2014 Purchase Order, and the 2015 VOR—are not evidence of a *use* of the invention, much less *public use*. This is not surprising as FMC's lead engineer testified the Shell Appomattox project was not fully qualified until REDACTED and the first tree was not delivered to Shell until REDACTED Weber Dep. A25:23–A26:5 (qualification), A19:2–16 (delivery). Because an embodiment was first delivered to Shell in REDACTED the invention could not have been "used" before the 2017 critical date and thus could not have been in "public use" under § 102. *Motionless Keyboard*, 486 F.3d at 1385. Indeed, citing *Motionless Keyboard*,

REDACTED

REDACTED

Judge Miller recently agreed that the public use provision of § 102 requires an actual use of the patented product—not merely a display.  *See Schlumberger*, 2019 WL 2450948, at *13–14 (finding no clear and convincing evidence of public use where evidence "shows that, at most, a portion of the [patented invention was] displayed.").

Second, FMC's motion should be denied as a matter of law because secret or confidential third-party offers/sales are not invalidating.  As discussed above (Part IV.B.3), "public" uses must be available to the public.  Indeed, "when an asserted prior use is not that of the applicant, § 102(b) is not a bar when that prior use or knowledge is not available to the public."  *Woodland Trust*, 148 F.3d at 1371; *see also Dey*, 715 F.3d at 1355 ("secret or confidential third party uses do not invalidate later-filed patents"); *Invitrogen*, 424 F.3d at 1380 ("Commercial exploitation [under the "public use" provision] . . . likely requires more than, for example, a secret offer for sale."); *W.L. Gore*, 721 F.2d at 1549–50; *Baxter Int'l*, 88 F.3d at 1061) (Newman, J., dissenting) (section 102(b) does not cover "unknown and unknowable information in the possession of third persons").  Here, it is undisputed the transaction between FMC and Shell was subject to an obligation of confidentiality.  *See* Weber Dep. at 64:1–11, 66:17–20, 96:6–11.  Indeed, FMC continues to assert trade secret protection over all pertinent details and will not allow OneSubsea management or in-house counsel to view the evidence levied against OneSubsea's duly issued United States patent. A37 (refusing to allow OneSubsea in-house counsel access to the unredacted motion or Ms. Weber's declaration because "[b]oth contain highly specific information regarding the design of FMC's trees").  FMC even filed the instant motion under seal in order to maintain

REDACTED
REDACTED

the secrecy of its alleged prior art. *Compare* Dkt. 107, *with* Dkt. 110 (Dkt. 110 redacting technical description and figures related to the alleged prior art). Because the FMC/Shell transaction in 2015 was confidential and secret, it was not available to the public and, thus, cannot be a "public use." *See, e.g.*, *Woodland Trust*, 148 F.3d at 1371.

While FMC may think this result inequitable, United States patent law has never rewarded a party for intentionally withholding an invention from the public because doing so "impedes 'the progress of science and the useful arts.'" *See Paulik v. Rizkalla*, 760 F.2d 1270, 1273 (Fed. Cir. 1985) (*en banc*) (analyzing whether inventor abandoned, suppressed, or concealed that invention under 35 U.S.C. § 102(g))[4]; *accord Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 480 (1974) ("the patent laws impose upon the inventor a requirement of disclosure"); *accord Caveney*, 761 F.2d at 675. As between a prior inventor who conceals her invention[5] and one who promptly files a patent application disclosing the invention, "the law favors the latter." *W.L. Gore*, 721 F.2d at 1550. Accordingly, there is nothing unfair in holding FMC's confidential sale is not a public use, as precedent requires. *See, e.g.*, *Woodland Trust*, 148 F.3d at 1371.

---

[4] The Patent Act historically allowed a prior inventor to invalidate another's patent if the prior inventor's activities were not abandoned, suppressed, or concealed—*see* 35 U.S.C. § 102(g)(2) (pre-AIA)—but Congress removed that provision in the transition to a first-to-file patent system. *See Solvay S.A. v. Honeywell Int'l Inc.*, 742 F.3d 998, 1000 n.1 (Fed. Cir. 2014).

[5] In essence, FMC claims it invented the subject matter of the '202 Patent before OneSubsea.

REDACTED

REDACTED

### D. FMC's Alleged Confidential Sale/Offer for Sale Is Not Invalidating Because the Alleged Sale Documents Do Not Identify a Product That Embodies Each Claim of the '202 Patent

FMC's motion should be denied even if this Court finds the on-sale provision of § 102(a)(1) applies. Denial is mandated because the documents that purportedly evidence the alleged sale do not provide any detail of what, if anything, FMC sold to Shell in REDACTED. This is important because an invalidating sale must be of the patented device—not some other device that does not embody the '202 Patent claims. *See Sparton Corp.*, 399 F.3d at 1325 (reversing district court finding of invalidity because the offer "was not an offer for sale of the patented device"). FMC attempts to compensate for its lack of documentary evidence through vague and uncorroborated testimony of its lead engineer, Alison Weber. But "uncorroborated oral testimony, particularly that of interested persons recalling long past events, does not, of itself provide the clear and convincing evidence required to invalidate a patent . . . ." *Woodland Trust*, 148 F.3d at 1369. Indeed, there is a "heavy burden when establishing prior public knowledge and use based on long-past events." *Id.* at 1373. This is especially true "in modern times, [where there is a] ubiquitous paper trail of virtually all commercial activity." *Id.* One must wonder why FMC has not produced any documentary evidence of what was sold in this transaction worth nearly half a billion dollars.

Moreover, FMC's declarant admitted at her deposition that she had not read the only two documents FMC relies upon as evidence of the alleged invalidating sale. Weber Dep. A34:4–11; A24:14–18. With no testimony and no documents showing what FMC sold to Shell, FMC cannot meet its burden to show by clear and convincing evidence that a ***product***

REDACTED

REDACTED

(which meets every limitation of each patent claim) was "on sale" before the critical date. *See ResQNet.com*, 594 F.3d at 867 (affirming district court finding that offer for sale did not constitute prior art because the product sold "did not embody all of the elements of claim 1"); *Sparton Corp.*, 399 F.3d at 1325.  As discussed further below, there is at least a question of material fact as to what, if anything, FMC sold to Shell in REDACTED . For this additional reason, FMC's motion should be denied.  *See* Fed. R. Civ. P. 56(a) (court must draw all reasonable inferences in favor of nonmovant OneSubsea); *see also Anderson*, 477 U.S. at 255.

### 1.    *FMC's Documentary Evidence Does Not Identify a Product That Embodies Each Claim of the '202 Patent*

The two documents FMC relies upon as evidence of a sale/offer for sale do not identify a product that embodies each claim of the '202 Patent.  These two documents are (1) a REDACTED referred to in FMC's brief as a "long-lead purchase order" and (2) a RED ACT Variation Order Request (VOR) Form referred to in FMC's brief as a "Purchase Contract."  Mot. at 10, 11; Exs. 10, 11.[6]  The "long-lead purchase order" was for raw materials, not a tree system with bores and valves.  *See* Mot. at 10; Ex. 10, Long Lead PO at 16–17 (identifying key delivery dates for "raw" items and "forgings"); *accord* Weber Dep. A23:12–20, A24:19–25.  OneSubsea disputes whether the long-lead PO evidences Shell's "inten[t] to purchase HPHT EVDTs" (Mot. at 10) because the document says

---

[6] Neither document is supported with a declaration.  Further, FMC's sole declarant could not authenticate either document because she has never read them.  Weber Dep. A23:4–6, A34:9–11.

REDACTED

REDACTED

nothing of Shell's intent and does not once mention "HPHT EVDTs."  In any event, the long-lead purchase order does not identify a particular subsea completion system product or specify a particular design, much less any product or design embodying all elements of any claim of the '202 Patent.  *See generally* Ex. 10.

The second document, the VOR, identifies a "REDACTED

" but does not further specify what was to be purchased.  Mot. at 11, Ex. 11 at 50.  FMC provided no documentary evidence tying the "REDACTED

" to a particular product design and likewise provided no evidence tying the "REDACTED" to the patent claims at issue.  The VOR is not clear and convincing evidence of a sale of the '202 Patent invention.  *See ResQNet.com*, 594 F.3d at 867 (affirming district court finding that offer for sale did not constitute prior art because the product sold "did not embody all of the elements of claim 1").

### 2. *FMC's Declarant Does Not Identify a Product That Embodies Each Claim of the '202 Patent*

FMC's attempt to bolster its insufficient documentary evidence through testimony from its lead engineer (Ms. Weber) also fails.  Ms. Weber testified by declaration that the REDACTED "purchase order informed FMC that Shell *intended* to purchase HPHT EVDTs from FMC for its Appomattox project *once they were qualified*."  Ex. 1, Weber Decl. ¶ 18 (emphasis added).  This is not evidence the REDACTED agreements were a sale/offer of the HPHT EVDTs.  Even if that testimony were probative, it is not reliable because Ms. Weber admitted at her deposition that she had not read either the REDACTED long-lead purchase

REDACTED REDACTED

order or the RED ACT VOR and instead had a "sense" from a "hallway conversation" of what Shell intended.  Weber Dep. A34:4–11; A24:14–18.

Ms. Weber's remaining declaration testimony does not identify *what* was sold/offered to Shell in REDA CTED  For example:

- At paragraph 19, Ms. Weber states the HPHT EVDT design was "fundamentally complete and had been qualified" by REDACTED , but tellingly does not state the HPHT EVDT design was the subject of the RED ACT VOR.  Ex. 1, Weber Decl. ¶ 19.  To the contrary, the VOR identifies a "RED ACT ED ," not an "HPHT EVDT." Ex. 11 at 50.  Thus, Ms. Weber's declaration does not appear to relate to the product sold to Shell.  Further, Ms. Webber does not explain what the term "HPHT EVDT" refers to—whether it is just the subsea tree, the entire subsea system (e.g., including the tubing spool and tubing hanger), or something else.  In any event, Ms. Weber contradicted her declaration by testifying in her deposition that full qualification of the HPHT EVDT design did not occur until "REDACTED ."  Weber Dep. A25:23–A26:5.

- At paragraph 22, Ms. Webber states the "REDACTED



."  Ex. 1, Weber Decl. ¶ 22.  This statement is ambiguous as to whether the REDACTED was

REDACTED

REDACTED

specified at the time of the REDACT sale.  Even assuming without conceding it was specified in the 2015 sale, the REDACTED does not disclose all (if any) elements of the '202 Patent claims.

- At paragraphs 24 and 26, Ms. Weber discusses the "design of all core components" and "[t]he core design and component interfaces."  Ex. 1, Weber Decl. ¶¶ 24, 26.  Here again, Ms. Weber does not explain what the "core components," "core design," or "component interfaces" were at the time of the REDACTED.  Consequently, there is no evidence that those components/designs/interfaces implement any of the elements of the '202 Patent claims.

- At paragraphs 28 and 30, Ms. Weber states that certain documents "are accurate representations of REDACTED of FMC's HPHT EVDTs."  Ex. 1, Weber Decl. ¶¶ 28, 30.  For at least the documents referred to in paragraph 28, Ms. Weber admitted they were based on documents that were generated in 2019.  Weber Dep. at A27:24–A28:11.  The documents referred to in paragraph 30 are not dated at all.  Thus, none of these documents is evidence of what was sold to Shell in REDACTED  Tellingly, Ms. Weber does not testify that they are.

FMC's failure to specify what product was offered/sold to Shell in REDACT is fatal to FMC's invalidity assertion because FMC must prove with clear and convincing evidence that it sold a product embodying the claims of the '202 Patent.  *See Sparton*, 399 F.3d at

REDACTED

REDACTED

1325 (rejecting invalidity assertion because the offer specified an unpatented item); *Elan Corp.*, 366 F.3d at 1341(rejecting invalidity assertion in part because the offer did not specify the item beyond a general dosing characteristic); *Caveney*, 761 F.2d at 675 (uncertainty as to the design ordered is not "clear and convincing evidence"). For at least this reason, summary judgment of invalidity should be denied.   Further, OneSubsea requested FMC produce and identify all evidence related to the REDACTED transactions between FMC and Shell as explained *supra* Part V.G.  OneSubsea cannot find any evidence in FMC's production of an offer for sale or sale of a product embodying the claims of the '202 Patent.   For at least this reason, partial summary judgment should be granted determining the FMC/Shell transaction does not invalidate any claim of the '202 Patent.

### E.   FMC's Product Design Was Incomplete and Uncertain Until After the Filing Date of the '202 Patent

If this Court finds the on-sale provision of § 102(a)(1) applies, neither the RED ACT long-lead purchase order nor the RED ACT VOR triggers an "on sale" bar because FMC's evidence confirms the HPHT EVDT design was incomplete and uncertain at the time of those transactions. *See Pfaff*, 525 U.S. at 68 n.14 (a product cannot be on-sale where there is "additional development after the offer for sale"); *Space Systems*, 271 F.3d at 1080 ("For a complex concept . . . a bare conception that has not been enabled is not a completed invention ready for patenting.").

FMC was still developing its HPHT EVDT system in REDACTED and development continued after that date.  Weber Dep. A35:4–7 ("Q. Do you know if the new product development work for the HPHT was still ongoing after REDACTED ?  A. Yes,

[REDACTED]

[REDACTED]

it was.").  Indeed, the VOR [REDACTED]

[REDACTED] :

[REDACTED]

Ex. 11, VOR at FMCTI-0681255 (emphasis added).

Ms. Weber testified by declaration that the ***concept*** of the "[REDACTED] ***portion***

of FMC's HPHT EVDT design was presented to Shell in [REDACTED] .  Ex. 1, Weber Decl.

¶ 12 (discussing a [REDACTED] presentation to Shell).  Her hearsay testimony

may be based on "hallway conversation" as she did not attend the meeting.  *See* Weber

Dep. A30:14–18 ("[W]ere you present when this was presented to Shell?  A. No, I was

not.").  Further, the evidence shows the overall HPHT EVDT design was in early stages in

[REDACTED] and some interfaces were not yet ready to lock down, much less formally design and

approve.  *See id.*, A31:16–A33:6 (discussing [REDACTED]

[REDACTED] ).  It would take FMC [REDACTED] more years to finalize and qualify the design of "all

the different components and for the different programs" for the HPHT EVDT product and

[REDACTED] more years to finalize the Shell-specific portions.  *Id.*, A24:18–A26:5.  Three to four

years of additional development renders the HPHT EVDT design merely a concept and not

ready for patenting in [REDACTED] when the long-lead purchase order and VOR were

executed.  *See Pfaff*, 525 U.S. at 68 n.14; *Space Systems*, 271 F.3d at 1080.  Tellingly, FMC

REDACTED

REDACTED

delivered its first tree in REDACTED which was behind schedule and roughly REDACT years after

FMC would have the Court believe its design was ready for patenting.  Mot. at 12 (first

tree was to be delivered in REDACTED Weber Dep. A19:2–16.

The record is replete with specific examples showing significant ongoing

development activities.  For example, the REDACT Shell presentation presents two options for

the product design, one of which REDACTED and the other REDACTED

REDACTED Ex. 9 at 25, 26.  REDACTED

In another example, the REDACT Shell presentation also describes substantial features

not included in the product delivered to Shell.  For example, the presentation describes a

mechanism for connecting optical communication lines between the tree and tubing

hanger.  Ex. 9, 28–31.  This mechanism was not part of the product sold to Shell.  Weber

Dep. A15:8–15 ("[W]as there a reason the REDACTED was not included in the final

design of the HPHT?  A. Yes. REDACTED was chosen instead, by

the operator.  Q. Who is the operator?  A. REDACTED .").

Further, Ms. Weber testified the design of the "REDACTED" and "REDACTED changed

after REDACTED Weber Dep. A16:3–A17:23.  Ms. Weber also testified that full qualification of

the HPHT EVDT design (which FMC alleges was sold/offered for sale in REDACTED was not

complete until as late as REDACTED Id., A25:9–22 ("Q. What is final qualification testing?  A.

REDACTED

REDACTED

It's physical testing that simulates pressure temperature or loading that the component's going to see in the actual design. … Q. Do you know when final qualification occurred for the HPHT EVDT design?  A. It was different for all the different components and for the different programs. So that could have been anywhere between REDACTED .").

In sum, FMC failed to sustain its burden of proving with clear and convincing evidence the existence of an offer for sale because whatever design existed in REDACTED was the subject of substantial additional development and required verification. *See Pfaff*, 525 U.S. at 68 n.14 (a product cannot be on-sale where there is "additional development after the offer for sale"); *Space Systems*, 271 F.3d at 1080 ("For a complex concept … a bare conception that has not been enabled is not a completed invention ready for patenting."). For at least this reason, FMC's motion for summary judgment of invalidity should be denied. Instead, based on the present record, partial summary judgment should be granted finding the FMC/Shell transaction does not invalidate any claim of the '202 Patent.

## F.  FMC's HPHT Product Was Not "On Sale" Prior to the Filing Date of the '202 Patent

If this Court finds the on-sale provision of § 102(a)(1) applies, it should find FMC failed to prove an "on sale" bar because FMC was not willing to offer for sale the HPHT EVDT system until REDACT at the earliest. In *Medicines I*, the *en banc* Federal Circuit found such activity to be "pre-commercial" activity that does not trigger the on-sale bar. *Medicines I*, 827 F.3d at 1378 (a product is not on-sale when party "has told buyers that it cannot have access to the invention yet, regardless of a customer's interest in buying.").

REDACTED

REDACTED

Ms. Weber testified the earliest FMC would allow a customer to order the HPHT EVDT

system was no earlier than 2017, three years after the long-lead PO and two years after the

VOR.  *See* Weber Dep. A26:2–21.  Specifically, Ms. Weber explained FMC's step-wise

development process REDACTED

*Id.*, A12:19–A13:1.  REDACTED

. *Id.*, A14:5–9.

REDACTED

*Id.*, A26:9–21.  As Ms. Weber explained:

REDACTED

*Id.*, A25:9–17.  She further explained:

REDACTED

REDACTED

REDACTED

REDACTED

> A. *It means that a project can now order that component.*

*Id.*, A26:15–21 (emphasis added).

Thus, FMC's clear process required designs to be qualified and reviewed before FMC would accept an order for a product of that design. But full qualification and review for the HPHT EVDT system was not complete until REDACTED  *Id.*, A25:18–22. Even the portions included in the Shell-specific Appomattox project were not fully qualified until sometime in REDACTED  *Id.*, A25:23–A26:5. Thus, FMC's own evidence proves the HPHT EVDT system could not have been "on sale" in REDACT  when the VOR was executed because FMC would not have sold the incomplete, unqualified, unreleased HPHT EVDT system.

In sum, FMC failed to sustain its burden of proving with clear and convincing evidence that the HPHT EVDT system was "on sale" in REDACT  because FMC exercised its control to refuse orders for that specific product until REDACT  at the earliest. *See Medicines I*, 827 F.3d at 1378 (not on-sale when party "has told buyers that it cannot have access to the invention yet, regardless of a customer's interest in buying."). For at least this reason, summary judgment of invalidity should be denied. Instead, based on the present record, partial summary judgment should be granted finding the FMC/Shell transaction does not invalidate any claim of the '202 Patent.

### G. OneSubsea Maintained Infringement Allegations in Good Faith

FMC insists OneSubsea should have dismissed the '202 Patent long ago and "reserves its rights to seek fees relating to defending against accusations involving the '202 Patent going back to November 15, 2018." Mot. at 3 n.3. Had FMC produced clear

REDACTED

REDACTED

evidence of invalidating prior art, OneSubsea may well have dismissed its '202 Patent counterclaim.  But FMC failed or refused to disclose such evidence and cannot now cast aspersions on OneSubsea for proceeding on a presumed-valid patent.

The Patent Local Rules required FMC to produce its prior art evidence along with its invalidity contentions on November 15, 2018 along with its preliminary invalidity contentions.  *See* Ex. 19; *see also* P.R. 3-4(b).  FMC's document production was far from clear or convincing.   Rather than lay in wait, OneSubsea requested additional documentation of those activities.   On December 21, 2018, OneSubsea identified this deficiency in writing: "FMC did not produce a copy of its offer to Shell for the allegedly prior art Appomattox sale (or identify production copies of that material)."  A39.

OneSubsea then propounded interrogatories requesting identification of FMC's evidence of its alleged prior art sale/offer for sale:

> Interrogatory No. 5:  Identify all documents that formed FMC's purported prior art offer to sell the OSS Accused Product.
>
> * * *
>
> Interrogatory No. 7: Identify all documents and evidence (including any testimony) on which You intend to rely to support Your contention that any claim of the OSS Asserted Patent is invalid.

Ex. 22, FMC Resp. to Irogs. at 16, 17–18.  FMC's response to Interrogatory No. 5 simply "incorporate[d] by reference its response to Interrogatory No. 3," which identified only four documents and incorporated by reference FMC's response to Interrogatory No. 2.  *Id.* at 16 (response to No. 5), 15 (response to No. 3), and 10–12 (response to No. 2).  FMC's

REDACTED

REDACTED

response to No. 2 then incorporated by reference its responses to Interrogatory Nos. 3–7.

*Id.* at 12.  None of FMC's responses were verified.  *See generally id.*

> OneSubsea again pressed for more information:

> FMC was obligated to produce its prior art evidence months ago but chose to withhold (or does not have) evidence of a prior art sale/offer-for-sale. OneSubsea followed up with discovery requests, but FMC's responses and document productions on this topic were insufficient or incomplete (and unverified, in the case of the interrogatory responses). FMC's demand to drop the '202 Patent would have been better received if FMC had provided verified responses and full documentation of the alleged prior art efforts to design and manufacture "REDACTED" tree systems for Shell for eventual deployment to the Appomattox field.

A42–43.

> In response, FMC flatly refused to provide verified responses, stating:

> FMC does not see the necessity of verifying its responses to interrogatories (many of which contain contentions) at this time, as it is not relying on information contained therein to support its MSJ.

> …

> The factual information that appears relevant to the pending MSJ at the present time includes the documents referenced therein and the sworn testimony in the declaration of Allison Weber . . . .

A45.

> OneSubsea acted cautiously and reasonably in view of FMC's invalidity position.

Thus, FMC's unreasonable threat of attorney fees rings hollow.

### H.    FMC Continues to Assert Trade Secret Protection Over Its HPHT Product Design

FMC's insistence on confidentiality in its business dealings prior to the critical date

excludes those activities from the body of prior art as explained in Parts V.C and V.D

REDACTED

REDACTED

*supra*. FMC's continued insistence on confidentiality after placing those dealings at issue as prior art raises serious policy concerns. FMC's designation of substantially *all* its evidence as RESTRICTED – ATTORNEYS EYES ONLY prevents all OneSubsea employees from seeing the "prior art" under the Amended Protective Order. FMC insists its motion for summary judgment and declaration "[b]oth contain highly specific information regarding the ***design of FMC's trees***" which cannot be shared. A37. FMC cites no authority for invalidating a patent using prior art so secret neither the inventors nor in-house counsel of the inventor's company can see the prior art. This prevents OneSubsea from knowing whether other patents might be at risk of invalidation by the same activities or whether FMC's alleged prior art activities should be disclosed to the USPTO during prosecution of related applications. And it is axiomatic that FMC's alleged secret prior art does not meet the applicable "*public* use" provision of § 102. Thus, FMC's motion fails as a matter of law.

## VI.    ONESUBSEA OBJECTS TO FMC'S EVIDENCE

FMC failed to identify which facts it relies on are material. To preserve its rights, OneSubsea attaches a Statement of Genuine Disputes of Fact disputing and objecting to FMC's factual assertions. OneSubsea also objects to FMC's evidence as follows:

### A.    Objections to Exhibit 1 – Allison Weber Declaration

OneSubsea objects to Ms. Weber's declaration to the extent it presents uncorroborated testimony, which is insufficient to satisfy FMC's burden of proving invalidity with clear and convincing evidence. *Woodland Trust*, 148 F.3d at 1369

REDACTED

REDACTED

("[U]ncorroborated oral testimony, particularly that of interested persons recalling long past events, does not, of itself provide the clear and convincing evidence required to invalidate a patent . . ."). FMC's files are replete with documents evidencing when designs were approved at various stages. Weber Dep. A10:17–25 (testifying about the controlled dates on FMC engineering drawings). FMC's refusal to produce full documentation of designs and records of meetings showing those designs to Shell strongly suggests FMC cannot prove it had complete designs at the time of the REDACT VOR. *See id.* (it is rare to not have documentary evidence "in modern times, [where there is a] ubiquitous paper trial of virtually all commercial activity.").

OneSubsea further objects to Ms. Weber's declaration as vague and ambiguous where it characterizes concepts without detail necessary for understanding what was and was not known or complete at critical times.

- In paragraph 11, Ms. Weber mentions REDACTED
  to suggest the HPHT product design (or at least the material portions thereof) was complete. Ms. Weber failed to explain what REDA

- In paragraph 13, Ms. Weber describes a design as being in "an advanced stage" rather than identify which of FMC's formal design review process stages had been completed at that time. *See* Weber Dep. A10:17–25 (testifying about the controlled review dates on FMC engineering drawings), A26:15–21 (testifying

REDACTED

REDACTED

about additional process steps of REDACTED

REDACTED ).

- In paragraph 17, Ms. Weber uses the ambiguous terms REDACTED

  REDACTED

  REDACTED .

- In paragraph 19, Ms. Weber uses the ambiguous term "fundamentally complete" without explaining whether that means the overall design is at a certain design review stage or whether some set of "fundamental" aspects of the design were complete.

- In paragraphs 21 and 24–26, Ms. Weber uses the terms "core components" "common interfaces," "core design" without explanation thus suggesting without explanation, proof, or justification that those "core" features are somehow material to this motion.

- In paragraphs 23 and 25, Ms. Weber testifies about the "geometry" of an assembly rather than the design without explanation of the difference.

- In paragraphs 20 and 23, Ms. Weber testifies about two "REDACTED " of the "HPHT EVDT" to suggest similarities without explaining what was similar and what was different.

- In paragraph 23, Ms. Weber explains that "design, engineering, and qualification" activities "progressed in parallel" and mentions a date of

REDACTED

REDACTED

REDACTED without explaining whether the "design, engineering, and qualification" activities occurred before or after that date.

- In paragraphs 27–30, Ms. Weber testifies about certain computer aided design (CAD) images and implies that these CAD images represent what was sold to Shell in REDACTED Ms. Weber's declaration does not associate any dates with the drawings.

**B.    Objections to Exhibit 7 – Presentation Entitled "REDACTED"**

OneSubsea objects to this exhibit as unauthenticated and not self-authenticating. OneSubsea objects to this exhibit as not relevant or probative of any issue relating to invalidity because it does not evidence the design, if any, subject to an offer/sale to Shell in REDACT or the completeness of that design. OneSubsea objects to this exhibit as more prejudicial than probative because it implies a completed design and a particular design was tested as of a particular date without establishing either predicate fact.

**C.    Objections to Exhibit 8 – Untitled/Undated Presentation**

OneSubsea objects to this exhibit as unauthenticated and not self-authenticating. This document is untitled and undated.

**D.    Objections to Exhibit 9 – Presentation Entitled "REDACTED"**

OneSubsea objects to this exhibit as improperly authenticated and not self-authenticating. Ms. Webber's declaration purports to authenticate Exhibit 9 at Paragraph 16 of her declaration: "I have reviewed the document marked FMCTI-0680033 and confirm it is an accurate representation of the presentation given to REDACTED,

REDACTED

REDACTED

except it was presented in color and the date appears to have auto-updated to the last date that the presentation was opened." Ms. Weber contradicted this testimony at her deposition where she testified she was not present at the meeting REDACTED (A30:16–18) and therefore has no personal knowledge of what was shown REDACTED. Further, Ms. Weber's declaration contains a color image from Exhibit 9, a black and white document.

### E.   Objections to Exhibit 10 – REDACT Long-Lead Purchase Order

OneSubsea objects to this exhibit as unauthenticated and not self-authenticating. In addition, this exhibit has unexplained handwritten alterations to the date on many pages.

### F.   Objections to Exhibit 11 – REDACT Variation Order Request (VOR)

OneSubsea objects to this exhibit as unauthenticated and not self-authenticating.

### G.   Objections to Exhibit 12 – Presentation Entitled "REDACTED ____"

OneSubsea objects to this exhibit as unauthenticated and not self-authenticating. OneSubsea objects to this exhibit as not relevant or probative of any issue relating to invalidity because it does not evidence the design, if any, subject to an offer/sale to Shell in REDACT or the completeness of that design. The presentation is dated February 11, 2019 with no testimony setting a different date.

### H.   Objections to Exhibits 15 and 17 – Undated CAD Drawings of REDACTED

OneSubsea objects to these exhibits as not relevant or probative of any issue relating to invalidity because they do not evidence the design, if any, subject to an offer/sale to Shell in REDACT or the completeness of that design. OneSubsea objects to this exhibit as more prejudicial than probative on the question of invalidity because it implies a complete design

REDACTED

REDACTED

and a particular design was existed as of a particular date without establishing either predicate fact.

OneSubsea specifically objects to Exhibit 15 (FMCTI-0685732) as not probative of any design in existence in RED ACT because it was created in 2019.  Weber Dep. A27:24– A28:11 (discussing her declaration's references at paragraph 27 to FMCTI-0685732 and FMCTI-0685709).

### I.       Objections to Exhibits 16 and 18 – Undated CAD Drawings

OneSubsea objects to these exhibits as not relevant or probative of any issue relating to invalidity because they do not evidence the design, if any, subject to an offer/sale to Shell in RED ACT or the completeness of that design.  OneSubsea objects to this exhibit as more prejudicial than probative on the question of invalidity because it implies a completed design and a particular design existed as of a particular date without establishing either predicate fact.

OneSubsea specifically objects to Exhibit 16 (FMCTI-0685709) as not probative of any design in existence in RED ACT because it was created in 2019.  Weber Dep. A27:24– A28:11 (discussing her declaration's references at paragraph 27 to FMCTI-0685732 and FMCTI-0685709).

### J.       Objections to Exhibit 22 – FMC's Unverified Interrogatory Responses

OneSubsea objects to FMC's interrogatory responses as unverified and therefore, not competent summary judgment evidence.  *Brady v. Blue Cross & Blue Shield of Tex., Inc.*, 767 F. Supp. 131, 135 (N.D. Tex. 1991).  OneSubsea requested verification of FMC's responses, but FMC declined to verify its responses stating: "FMC does not see the

REDACTED

REDACTED

necessity of verifying its responses to interrogatories (many of which contain contentions) at this time, as it is not relying on information contained therein to support its MSJ." A45.

FMC further stated:

> The factual information that appears relevant to the pending MSJ at the present time includes the documents referenced therein and the sworn testimony in the declaration of Allison Weber, and we are working on providing your side with a date for Ms. Weber's deposition regarding her declaration prior to the deadline ordered by the Court.

*Id.*

### K.    Objections to Exhibit 24 – An Engineering Drawing

OneSubsea objects to Exhibit 24 as not relevant to what was purportedly sold/offered to Shell in REDACTED  The document is labeled not final even REDACT years later:

REDACTED

Ex. 24 (excerpt).  Moreover, the internal dates indicate this component design was not complete until REDACT at the earliest.



REDACTED

REDACTED

REDACTED

Ex. 25 (excerpt).  Ms. Weber testified that the earliest reliable date on the drawing is the

REDACTED or months after the purported

sale/offer to Shell.  *See* Weber Dep. A10:17–25 (testifying that the REDACTED

).

## VII.   CONCLUSION

Because the evidence proves the Shell Appomattox project was between two parties

unrelated to the patentee and did not place an HPHT EVDT in "use" until after the critical

date, OneSubsea is entitled to partial summary judgment that the HPHT EVDT is not prior

art and the Appomattox activities do not invalidate any claim of the '153 Patent.  Further,

FMC is not entitled to summary judgment because FMC failed to prove invalidity by clear

and convincing evidence.

Dated:  June 14, 2019                     Respectfully submitted,

                                          SLAYDEN GRUBERT BEARD PLLC

                                          By:   */s/ Truman H. Fenton*
                                                Bruce W. Slayden II (SBN 18496695)
                                                Attorney-in-Charge
                                                S.D. Texas Bar No. 21067
                                                Email: bslayden@sgbfirm.com
                                                Brian C. Banner (SBN 24059416)
                                                Email: bbanner@sgbfirm.com
                                                Truman H. Fenton (SBN 24059742)
                                                Email: tfenton@sgbfirm.com
                                                Slayden Grubert Beard PLLC
                                                401 Congress Avenue, Suite 1650
                                                Austin, TX  78701
                                                Tel: 512-402-3550
                                                Fax: 512-402-6865

                                                *Attorneys for Defendants OneSubsea IP UK*
                                                *Limited and OneSubsea UK Limited,*

REDACTED

REDACTED

*OneSubsea LLC, and Cameron*
*International Corporation*

REDACTED

REDACTED

## CERTIFICATE OF SERVICE

I hereby certify that on June 14, 2019, a copy of the foregoing document and its exhibits have been filed electronically using the court's Electronic Case Management System.  Notice of this filing will be sent electronically to counsel of record using the Court's electronic notification system. A courtesy copy will be sent to counsel of record via email.

*/s/ Truman H. Fenton*

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that I am authorized to file this motion and its exhibits under seal because they contain information designated under the protective order.  Dkt. 11, Amended Protective Order at 12 ("16. Any DESIGNATED MATERIAL that is filed with the Court shall be filed under seal . . . .").

*/s/ Truman H. Fenton*