Case 4:18-cv-02459   Document 135   Filed on 09/24/19 in TXSD   Page 1 of 19

United States District Court
Southern District of Texas

**ENTERED**
September 24, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| FMC TECHNOLOGIES, INC., § <br> Plaintiff, § <br> § <br> v. § <br> § <br> ONESUBSEA IP UK LIMITED, *et al.*, § <br> Defendants. § | CIVIL ACTION NO. H-18-2459 |

# **MEMORANDUM AND ORDER**

This patent infringement case is before the Court on the Motion for Summary Judgment of Invalidity ("FMC's Motion") [Doc. # 107] filed by FMC Technologies, Inc. ("FMC"), to which OneSubsea IP UK Limited & OneSubsea LLC (collectively, "OneSubsea") filed an Opposition and Cross-Motion for Partial Summary Judgment of No Invalidity ("OneSubsea's Motion") [Doc. # 116]. FMC filed a Reply [Doc. # 123] in support of its Motion, and OneSubsea filed a Reply [Doc. # 127] in support of its Motion. The Court, having carefully reviewed the record and the governing legal authorities, **grants** FMC's Motion and **denies** OneSubsea's Motion.[1]

---

[1] Also pending are OneSubsea's Motion for Partial Summary Judgment of Infringement [Doc. # 117], to which FMC filed a Response [Doc. # 122], OneSubsea filed a Reply [Doc. # 126], and FMC filed a Sur-Reply [Doc. # 130]. Additionally, OneSubsea filed a Motion for Leave to Amend its Counterclaim and Preliminary Infringement Contentions [Doc. # 128], to which FMC filed a Response [Doc. # 131], OneSubsea filed a Reply [Doc. # 132], and FMC filed a Sur-Reply [Doc. # 133]. OneSubsea filed a Motion to Strike FMC's Sur-Reply [Doc. # 134]. Because the Court grants FMC's Motion regarding invalidity, the Court **denies** each of these motions as **moot**.

## I. BACKGROUND

OneSubsea IP US Limited is the owner of United States Patent No. 9,945,202 ("the '202 Patent"). The patent application was filed March 27, 2017, and the '202 Patent was granted April 17, 2018.

FMC manufactures and sells versions of its vertical subsea well completion system that are designed to withstand higher pressures and temperatures found in more extreme and deeper water environments. The product is referred to as a High-Pressure High-Temperature Enhanced Vertical Deepwater Tree ("HPHT EVDT"). There is a version rated for up to 15,000 pounds per square inch of pressure ("15ksi") and up to 400 degrees Fahrenheit (the "15k/400F HPHT EVDT"). There is another version rated for up to 20,000 pounds per square inch of pressure ("20ksi") and up to 350 degrees Fahrenheit (the "20k/350F HPHT EVDT"). The two versions of the HPHT EVDT were developed together and are materially identical. FMC has presented evidence that the 15k/400F HPHT EVDT was completed before the 20k/350F version because it was needed for a Shell Offshore, Inc. ("Shell") project.

OneSubsea alleges that FMC is infringing the claims of the '202 Patent through the HPHT EVDT system rated for 20ksi. *See* Amended Counterclaims [Doc. # 87], ¶ 17. OneSubsea alleges also that its claims are not limited to 20ksi systems. *See id.*, ¶ 18.

FMC argues if OneSubsea's assertion that the 20k/350F HPHT EVDT is infringing is accepted as true, then the sale to Shell of the FMC 15k/400F HPHT EVDTs constitutes a prior sale that invalidates the '202 Patent under 35 U.S.C. § 102(a)(1).[2] FMC cites the "well-settled maxim" that "that which infringes, if later, anticipates if earlier." *See* Motion, p. 1 (citing *Upsher-Smith Labs. v. Pamlab, LLC*, 412 F.3d 1319, 1322 (Fed. Cir. 2005)). FMC's Motion has been fully briefed and is now ripe for decision.

## II. SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides for the entry of summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Where, as here, the movant bears the burden of proof at trial on the issues at hand, it "bears the initial responsibility of demonstrating the absence of a genuine issue of material fact with respect to those issues." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718 (5th Cir. 1995); *see also Brandon v. Sage Corp.*, 808 F.3d 266, 269-70 (5th Cir.

---

[2] Section 102(a)(1) provides that "[a] person shall be entitled to a patent *unless* – (1) the claimed invention was patented, described in a printed publication, or in public use, *on sale*, or otherwise available to the public before the effective filing date of the claimed invention[.]" 35 U.S.C. § 102(a)(1) (emphasis added).

2015); *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).[3] If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Brandon*, 808 F.3d at 270.

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *See Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 234 (5th Cir. 2016). However, factual controversies are resolved in favor of the non-movant "only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Salazar-Limon v. City of Houston,* 826 F.3d 272, 277 (5th Cir. 2016). The non-movant's burden is not met by mere reliance on the allegations or denials in its pleadings. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002). Likewise, "unsubstantiated or conclusory assertions that a fact issue exists" do not meet this burden. *Morris v.*

---

[3] OneSubsea objects to much of FMC's evidence as uncorroborated and/or unauthenticated. Under the Federal Rules of Civil Procedure, a party may object to material presented in support of a motion for summary judgment if the material "cannot be presented in a form that would be admissible in evidence." *See* FED. R. CIV. P. 56(c)(2). OneSubsea has not shown that FMC's evidence could not be presented in an admissible form at trial. Nonetheless, FMC has now provided authentication for its proffered evidence, and has provided testimony to support its evidence as being within the business records exception to the hearsay rule, through the Declaration of Jocelyn Waggoner. As a result, OneSubsea's objections are **overruled**.

*Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). Instead, the nonmoving party must present specific facts that show the existence of a genuine issue of material fact. *Id.*

"When evaluating a motion for summary judgment, the court views the record evidence through the prism of the evidentiary standard of proof that would pertain at a trial on the merits." *SRAM Corp. v. AD-II Engineering, Inc.*, 465 F.3d 1351, 1357 (Fed. Cir. 2006). A patent is presumed valid under 35 U.S.C. § 282, and "overcoming that presumption requires clear and convincing evidence." *Spectrum Pharm., Inc. v. Sandoz Inc.*, 802 F.3d 1326, 1333 (Fed. Cir. 2015). As a result, at the summary judgment stage, a party asserting patent invalidity must submit clear and convincing evidence of invalidity. *See Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1378 (Fed. Cir. 2005).

### III. ANALYSIS

#### A. On-Sale Bar

"To further the goal of motivating innovation and enlightenment while also avoiding monopolies that unnecessarily stifle competition, Congress has imposed several conditions on the limited opportunity to obtain a property right in an idea." *Helsinn Healthcare S.A. v. Teva Pharm. USA, Inc.*, __ U.S. __, 139 S. Ct. 628, 632 (2019) (internal quotations and citations omitted). One of these conditions, the on-

sale bar, "reflects Congress's reluctance to allow an inventor to remove existing knowledge from public use by obtaining a patent covering that knowledge." *Id*. The on-sale bar precludes a person from receiving a patent, and can invalidate an existing patent, on an invention that was "on sale . . . before the effective filing date of the claimed invention."[4] 35 U.S.C. § 102(a)(1). There are two requirements for the on-sale bar to apply: (1) the invention must have been "the subject of a commercial offer for sale," and (2) the invention "must be ready for patenting." *Helsinn*, 139 S. Ct. at 633 (quoting *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 67-68 (1998)).

Under the Leahy-Smith America Invents Act ("AIA"), which was signed into law on September 16, 2011, and was fully in effect as of March 16, 2013, a person remains barred from receiving a patent on an invention that was "on sale . . . before the effective filing date of the claimed invention." 35 U.S.C. § 102(a)(1). The AIA did not alter the meaning of "on sale" for purposes of § 102(a)(1) and, as a result,

---

[4] The AIA modified to some extent the critical date for the on-sale bar. Prior to the AIA, the on-sale bar precluded a person from receiving a patent on an invention that had been on sale more than one year before filing a patent application. The AIA changed the time limits for the on-sale bar, providing that a person would not be entitled to a patent if the claimed invention was on sale before the effective filing date. *See* 35 U.S.C. § 102(a)(1). The AIA also, however, made an exception for disclosures made one year or less before the effective filing date if "made by the inventor or joint inventor or by another who obtained the subject matter disclosed directly or indirectly from the inventor or joint inventor . . .." 35 U.S.C. § 102(b)(1)(A). Therefore, under the AIA, for sales made by the inventor, the critical date remains one year before the application filing date, while for sales made by third parties, the critical date is the effective filing date of the patent application.

prior Federal Circuit rulings addressing the "on sale" bar continue to apply after enactment of the AIA.  *See Helsinn*, 139 S. Ct. at 630.

FMC argues that the '202 Patent is invalid pursuant to the on-sale bar in § 102(a)(1).  FMC bases its invalidity argument on its sale of ten 15k/400F HPHT EVDTs to Shell in 2015.  OneSubsea argues in response that the on-sale bar applies only to sales by the inventor, not to sales by an unrelated third party such as FMC.  OneSubsea argues also that, if the on-sale bar applies to sales by third parties, FMC has failed to present evidence to establish the requirements for the on-sale bar in this case.  OneSubsea's arguments are unavailing.

### B.     Sales by a Third Party

Section 102(a)(1) states that a person is entitled to a patent unless the claimed invention was on sale before the effective filing date.  *See* 35 U.S.C. § 102(a)(1).  An exception is made for disclosures made "one year or less" before the filing date "if the disclosure was made by the inventor or joint inventor or by another who obtained the subject matter disclosed directly or indirectly from the inventor or a joint inventor." *See* 35 U.S.C. § 102(b)(1)(A).  The statutory text supports the Federal Circuit's repeated holdings, discussed below, that sales before the critical date by a third party can create an on-sale bar.  If only sales by an inventor could create an on-sale bar,

there would be no need for an exception for those sales or other disclosures that are made by an inventor one year or less before the filing date.

OneSubsea cites *In re Caveney*, 761 F.2d 671 (Fed. Cir. 1985), and *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860 (Fed. Cir. 2010), to support its argument that the on-sale bar applies only to sales by the inventor.[5] In *Caveney*, the Federal Circuit affirmed the rejection of certain patent claims because the claimed invention was offered for sale in the United States prior to the critical date. *See Caveney*, 761 F.2d at 673. The Federal Circuit clearly stated a general rule that "sales or offers by one person of a claimed invention will bar another person from obtaining a patent if the sale or offer is made [prior to the critical date]." *Id.* at 675 (citing *Pennwalt Corp. v. Akzona Inc.*, 740 F.2d 1573, 1580 n.14 (Fed. Cir. 1984); *General Elec. Co. v. United States*, 654 F.2d 55, 61-62 (Ct. Cl. 1981)). In the *Pennwalt* footnote cited in *Caveney*, the Federal Circuit stated "it is well settled that the 'on sale' bar applies to sales made by the inventor or another, with or without the inventor's consent." *Pennwalt*, 740 F.2d at 1580 n.14 (citing *Andrews v. Hovey*, 124 U.S. 694, 719 (1888)). The Federal Circuit in *Caveney* discussed an exception to this general rule "where a patented method is kept secret and remains secret after a sale of

---

[5] OneSubsea also cites district court cases that rely on *Caveney* and *ResQNet*. The Court bases its decision in this case on the language of § 102 and binding Federal Circuit case law regarding the on-sale bar.

the unpatented product . . ..ˮ *Caveney*, 761 F.2d at 675. The Federal Circuit explained that such secret sales prior to the critical date are not a bar if made by a non-inventor, but explained further that the sale is not a "secret" sale for purposes of the exception if the claimed invention was disclosed to the purchaser in the sales transaction. *See id.* at 675-76. The Federal Circuit stated that when a sale is "made by a person other than the patentee or patent applicant, as in this case, the policy against removing inventions from the public domain and the policy favoring early filing of patent applications justify application of the 'on sale' bar . . ..ˮ *Id.* at 676.

Notwithstanding the clear ruling by the Federal Circuit in *Caveney* that the on-sale bar can apply to sales by a third party, One Subsea relies on the slim reed of *dicta* appearing in footnote 5 in *Caveney*. There, the Federal Circuit stated "[s]ales or offers made by others and disclosing the claimed invention implicated the 'public use' provision[6] of 35 U.S.C. § 102(b)."[7] *Id.* at 675 n.5. The footnote's *dicta* does not preclude application of the on-sale bar, in addition to the "public use" provision of

---

[6] The "public use" bar is another means for invalidating a patent under § 102(a)(1). For a prior "public use" to invalidate a patent, the challenger must show that the purported use: "(1) was accessible to the public; or (2) was commercially exploited, and that commercial exploitation of the claimed invention is a clear indication of public use." *Quest Integrity USA, LLC v. Cokebusters USA Inc.*, 924 F.3d 1220, 1228 n.7 (Fed. Cir. 2019) (quoting *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1380 (Fed. Cir. 2005)). The public accessibility and commercial exploitation requirements for the "public use" bar are not necessary for the on-sale bar to apply.

[7] In prior versions of the statute, the on-sale bar and the public use provision were in § 102(b). The provisions are now in § 102(a)(1).

§ 102(a)(1). Significantly, the footnote's *dicta* does not negate the Federal Circuit's definitive ruling in *Caveney* and the line of Federal Circuit cases the Court cited.

OneSubsea cites also to the Federal Circuit's decision in *ResQNet*. In that case, the Federal Circuit declared definitively, as it did in *Caveney*, that an "offer for sale, sale, or public use, if [prior to the critical date], will bar patenting of the product, even if the sale was not authorized by the patentee." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 866 (Fed. Cir. 2010) (citing *Caveney*, 761 F.2d at 675). OneSubsea nevertheless focuses on the Federal Circuit's quote of *Caveney*'s footnote 5, inserted in *ResQNet* without analysis or reference to the cases cited in *Caveney*'s text, that "[s]ales or offers made by others and disclosing the claimed invention implicate the 'public use' provision of 35 U.S.C. § 102(b)." *Id.* (citing *Caveney*, 761 F.2d at 675 n.5). The statement in *ResQNet* regarding the "public use" provision of § 102(a)(1), like the statement in *Caveney*'s footnote, was *dicta*. The Federal Circuit in *ResQNet* affirmed the district court's ruling that the on-sale bar did not apply – not because the prior offer for sale was by a third party, but because the product offered for sale prior to the critical date did not embody all elements of the patent's claims. *See id.*

The Federal Circuit has specifically addressed on several occasions "whether activities by a third party create[] an on-sale bar . . .." *See J.A. LaPorte, Inc. v. Norfolk Dredging Co.*, 787 F.2d 1577, 1578 (Fed. Cir. 1986). In *LaPorte*, the Federal

Circuit stated that the on-sale bar "is not limited to sales by the inventor or one under his control, but may result from activities of a third party." *Id.* at 1581 (citing *Andrews v. Hovey*, 124 U.S. 694, 719 (1888); *Caveney*, 761 F.2d at 676; *Pennwalt Corp. v. Akzona, Inc.*, 740 F.2d 1573, 1580 n.14 (Fed. Cir. 1984); *General Elec. Co. v. United States*, 654 F.2d 55, 61-62 (Ct. Cl. 1981)); *id.* at 1583 ("the general rule [is] that a third-party sale of a device embodying the claimed invention prior [to] the critical date invalidates the patent"). In *LaPorte*, the Federal Circuit clarified any uncertainty that may have been created by its footnote in *Caveney*.

The Federal Circuit later stated again that the on-sale bar is "not limited to sales or uses by the inventor or one under the inventor's control, but may result from activities of a third party which anticipate the invention, or render it obvious." *In re Epstein*, 32 F.3d 1559, 1564 (Fed. Cir. 1994) (citing *Andrews*, 124 U.S. at 719; *La Porte*, 787 F.2d at 1581; *Caveney*, 761 F.2d at 676; *Pennwalt*, 740 F.2d at 1580 n.14; *General Elec. Co. v. United States*, 654 F.2d at 61-62 (Ct. Cl. 1981)).

The Court has carefully considered the parties' arguments, the language of § 102, and the holdings by the Federal Circuit. The Court concludes, as the Federal Circuit has repeatedly, that the on-sale bar is not limited to sales or offers for sale by the inventor or one under his control, but may result from sales or offers for sale by an unrelated third party.

The Court next addresses the two on-sale bar requirements set forth by the Supreme Court in *Helsinn* – whether the invention was the subject of a commercial sale or offer for sale, and whether the invention that was sold or offered for sale was ready for patenting at the time.

### C. Commercial Sale or Offer for Sale

A commercial sale or offer for sale for purposes on the on-sale bar need not make the invention publicly-available. *See Helsinn*, 139 S. Ct. at 633; *Quest Integrity USA, LLC v. Cokebusters USA Inc.*, 924 F.3d 1220, 1227 (Fed. Cir. 2019). "[T]he question of whether an invention is the subject of a commercial offer for sale is a matter of Federal Circuit law, to be analyzed under the law of contracts as generally understood." *Merck & Cie v. Watson Labs., Inc.*, 822 F.3d 1347, 1350 (Fed. Cir. 2016) (quoting *Group One, Ltd. v. Hallmark Cards, Inc.*, 254 F.3d 1041, 1047 (Fed. Cir. 2001)). A commercial sale "is a contract between parties to give and to pass rights of property for consideration which the buyer pays or promises to pay the seller for the thing bought or sold." *The Medicines Co. v. Hospira, Inc.*, 881 F.3d 1347, 1351 (Fed. Cir. 2018). An offer for sale is "one which the other party could make into a binding contract by simple acceptance." *Id*.

In this case, FMC has presented evidence that Shell signed a December 2014 purchase order for FMC's 15k-400F EVDT. *See* Purchase Order, Exh. 10 to Motion,

Attachment A. This allowed FMC to acquire the long-lead time items required for the qualification and production of the HPHT EVDT product. *See* Declaration of Allison Weber,[8] Exh. 1 to Motion, ¶ 18. The Purchase Order included pricing and delivery dates, including "15k 400F Gate Valve Body Forging" to be delivered by November 15, 2015. *See* Purchase Order, p. 17.

FMC also has presented evidence that in September 2015, Shell signed a "Variation Order Request (VOR) Form" incorporating the Purchase Contract in Attachment A. *See* Purchase Contract, Exh. 11 to Motion. The Purchase Contract provided for Shell to purchase from FMC ten "FMC 15 ksi, 400F EVDT Production Tree Systems." *See id.* at 50. The Purchase Contract included pricing and delivery dates. *See id.* at 23 (pricing); 11 (key delivery dates).

FMC also has presented evidence that the 15k/400F HPHT EVDT is not materially different from the accused 20k/350F HPHT EVDT. *See, e.g.,* Weber Decl., ¶ 21 (two versions were designed to have the same core components); ¶ 26 (core design and component interfaces of the two versions are the same). Indeed, OneSubsea does not contest that the two versions of FMC's HPHT EVDTs are materially the same, or that the 15k/400F HPHT EVDT includes all the claim

---

[8] Allison Weber was the Lead Engineer for Well Completion Systems Development for FMC from May 2013 until December 2017, leading the design for FMC's HPHT EVDTs. *See* Weber Decl., ¶ 2. She is currently Chief Product Developer for TechnipFMC. *Id.*

limitations of the '202 Patent.[9] OneSubsea argues instead that FMC has failed to present sufficient evidence that the object of the Purchase Order and the Purchase Contract was FMC's 15k/400F HPHT EVDT. As described above, the Purchase Order specifically refers to FMC's "15k-400F EVDT," and the Purchase Contract specifically identifies ten of FMC's "15 ksi, 400F EVDT Production Tree Systems" as equipment covered by the Purchase Contract. FMC's evidence that the 15k/400F EVDT is an HPHT product is persuasive and uncontradicted. *See* Deposition of Allison Weber, Exh. 29 to Reply, p. 80. The absence of the "HPHT" letters is immaterial because "HPHT" by definition relates to a well that is "hotter or higher pressure than most," having a temperature greater than 300F and requiring a BOP with a rating in excess of 10,000 psi. *See* Oilfield Glossary, Exh. 27 to Reply, p. 4. The Purchase Order and Purchase Contract identify FMC's EVDTs with 15k psi and 400F

---

[9] Although FMC bears the burden of proving that the EVDTs sold to Shell met all the limitations of the claims in the '202 Patent, that burden is satisfied by OneSubsea's allegation in paragraph 17 of its Amended Counterclaims [Doc. # 87] that the materially identical accused device (the 20k/350F HPHT EVDT) infringes the '202 Patent. *See Vanmoor v. Wal-Mart Stores, Inc.*, 201 F.3d 1363, 1366 (Fed. Cir. 2000) (citing *Evans Cooling Sys. Inc. v. General Motors Corp.*, 125 F.3d 1448, 1451 (Fed. Cir. 1997)); *see also ResQNet.com, Inc. v. Lansa, Inc.*, 382 F. Supp. 2d 424, 438 (S.D.N.Y. 2005), *rev'd on other grounds*, 594 F.3d 860 (Fed. Cir. 2010) (holding that if there is no genuine issue of material fact as to whether the product offered for sale prior to the critical date is materially the same as the accused product, "the application of the rule set forth in *Evans Cooling Systems* and *Vanmoor* would appear mandated.").

temperature, a psi and temperature that is HPHT.[10]  Moreover, OneSubsea has not presented evidence that the Purchase Order and Purchase Contract are for the purchase of any EVDT other than FMC's 15k/400F HPHT EVDT.  OneSubsea has failed to raise a genuine issue of material fact regarding whether FMC and Shell entered into a Purchase Order in December 2014 and a Purchase Contract in September 2015 for Shell to purchase ten of FMC's 15k/400F HPHT EVDTs, both events prior to the critical date in this case.

OneSubsea argues also that there was no sale prior to the critical date because Shell was not to receive delivery of a completed 15k/400F HPHT EVDT until December 31, 2017.  "The fact that delivery was set for dates after the critical date is irrelevant to the finding of a commercial offer to sell."  *STX, LLC v. Brine, Inc.*, 211 F.3d 588, 590 (Fed. Cir. 2000) (citing *Pfaff*, 525 U.S. at 67).

In summary, FMC has presented competent summary judgment evidence that, prior to the critical date of March 27, 2017, it entered into a Purchase Order and a Purchase Contract for Shell to purchase ten of FMC's 15k/400F HPHT EVDTs.  This satisfies the "commercial sale or offer for sale" element of the on-sale bar for purposes of 35 U.S.C. § 102(a)(1).

---

[10]   The Court notes that OneSubsea in its Preliminary Infringement Contentions uses similar shorthand, referring to the accused "20ksi 350 High Pressure High Temperature Enhanced Vertical Deepwater Tree as "20ksi EVDT." *See* Preliminary Infringement Contentions, Exh. 3 to Motion, p. 2.

**D.     Ready for Patenting**

A device subject to a commercial sale or offer for sale must be "ready for patenting" for the on-sale bar to apply. The "ready for patenting" element can be shown "by proof of reduction to practice" or by "drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention." *Helsinn*, 139 S. Ct. at 633 (quoting *Pfaff*, 525 U.S. at 67-68). It is not necessary for the device "to be ready to be put into operation for the on-sale bar to apply." *S. Snow Mfg. Co. v. SnoWizard Holdings, Inc.*, 567 F. App'x 945, 953 (Fed. Cir. June 30, 2014). Additionally, "fine-tuning of an invention after the critical date does not mean that the invention was not ready for patenting." *Hamilton Beach Brands, Inc. v. Sunbeam Prod., Inc.*, 726 F.3d 1370, 1379 (Fed. Cir. 2013).

FMC has presented evidence that by December 13, 2013, it "froze a single design of the core component interfaces for the HPHT EVDT design to handle both the 15k/400F and the 20k/350F ratings." *See* Weber Decl., ¶ 11. By March 2014, the HPHT EVDT design "was already at an advanced stage and the presentation to Shell included detailed Computer-Aided Design ("CAD") images showing the concentric stab assembly as well as other detailed drawings." *Id.*, ¶ 13. FMC has presented evidence that at the time of the September 2015 Purchase Order with Shell, "the design of the HPHT EVDT, including the concentric production and annulus stab, was

fundamentally complete and had been qualified." *Id.*, ¶ 19. "The design of all core components of both rated versions of the HPHT EVDT was complete by August 2015." *Id.*, ¶ 24. OneSubsea proffers no evidence to contradict any of these averments.

OneSubsea argues that the 15k/400F HPHT EVDT was not ready for patenting prior to the critical date because there was ongoing development and the first actual delivery of the device to Shell did not occur until 2018. As noted above, a device is "ready for patenting" when it is "depicted in drawings or described in writings of sufficient nature to enable a person of ordinary skill in the art to practice the invention." *The Medicines Co. v. Hospira, Inc.*, 881 F.3d 1347, 1353 (Fed. Cir. 2018) (quoting *Hamilton Beach*, 726 F.3d at 1375). FMC's evidence shows that by March 2014, it had developed CAD designs that were sufficient in nature to allow its engineers to manufacture the device and sufficient to entice Shell to purchase 10 of the 15k/400F HPHT EVDTs. "It is not necessary for the assemblies or the part to be ready to be put into operation for the on-sale bar to apply." *S. Snow*, 567 F. App'x at 953. OneSubsea has not presented evidence that after the March 2014 CAD designs and the core component designs were completed by August 2015, anything else was required for FMC to be able to manufacture the 15k/400F HPHT EVDT. There is no evidence that raises a genuine issue of material fact regarding whether FMC's EVDT

product that was sold to Shell in September 2015 was ready for patenting prior to the March 2017 critical date. As a result, FMC has satisfied the "ready for patenting" element of the on-sale bar for purposes of 35 U.S.C. § 102(a)(1).

## IV.    CONCLUSION AND ORDER

Under binding Federal Circuit authority, the on-sale bar can apply when the sale is by a third party who is unrelated to the inventor.

FMC has presented uncontroverted summary judgment evidence as to both the "commercial sale or offer for sale" and the "ready for patenting" elements of the on-sale bar. Specifically, FMC has presented competent summary judgment evidence that the 15K/400F HPHT EVDT, which is materially identical to the 20k/350F HPHT EVDT that OneSubsea alleges infringes the '202 Patent, was the subject of a commercial sale to Shell before the effective filing date for the '202 Patent. OneSubsea has failed to present evidence that raises a genuine issue of material fact on any of these facts. FMC also has presented evidence that the 15K/400F HPHT EVDT was ready for patenting at the time it was offered to and sold to Shell. OneSubsea has not presented evidence that raises a genuine issue of fact for trial on this issue. As a result, it is hereby

**ORDERED** that FMC's Motion for Summary Judgment of Invalidity ("FMC's Motion") [Doc. # 107] is **GRANTED**. It is further

**ORDERED** that OneSubSea's Cross-Motion for Partial Summary Judgment of No Invalidity [Doc. # 116] is **DENIED**.  It is further

**ORDERED** that OneSubsea's Motion for Partial Summary Judgment of Infringement [Doc. # 117], Motion for Leave to Amend Counterclaim and Preliminary Infringement Contentions [Doc. # 128], and Motion to Strike FMC's Sur-Reply [Doc. # 134] are **DENIED AS MOOT**.  It is further

**ORDERED** that counsel shall appear before the Court on **October 17, 2019, at 11:30 a.m.** for a status and scheduling conference.

SIGNED at Houston, Texas, this **24th** day of **September, 2019**.

_____
NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE